NICHOLAS GIAMBOZI, ADMINISTRATOR (ESTATE OF JESSIE GIAMBOZI) *v*. H. LEBARON PETERS.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and BOOTH, Js.

Argued October 1—decided December 5, 1940.

*Julius B. Kuriansky,* for the appellant (plaintiff).

*Cyril Coleman,* for the appellee (defendant).

AVERY, J.   This is an action of malpractice, brought against the defendant, Dr. Peters, a physician and surgeon of Bridgeport.   Pending the action, the defendant died and his executor was substituted as a party defendant.   The case was tried to the jury and the trial court directed a verdict for the defendant. The plaintiff moved to set the verdict aside and has appealed from the denial of that motion and also from the judgment, assigning to the latter appeal errors in the rulings upon evidence and in the finding.   The decisive question, however, is whether the court was correct in refusing to set the verdict aside.   None of the rulings complained of bear upon the evidence necessary for the determination of this question.   The undisputed facts are these: The plaintiff's decedent, on June 26, 1930, gave birth to a child in the Park City Hospital in Bridgeport.   Her attending physician that day became alarmed because of her loss of blood and summoned the defendant, Dr. Peters, to perform a transfusion.   Her brother volunteered to supply the necessary blood, and Dr. Peters used this blood without testing it for syphilis.   Dr. Peters did not see the deceased again until March 11, 1931.   In the mean-

time, it had been discovered that she had become infected with syphilis, and on that day Dr. Peters commenced to treat her for this condition. On March 26, 1931, he undertook to cure her condition. She died April 2, 1931. This action was commenced February 14, 1933.

The case was tried upon a substituted complaint in four counts. The first count sought damages for the death of the decedent alleged to have been caused by the negligence of the defendant in administering the dose of neosalvarsan on April 2, 1931. The second count sought damages for the death of the decedent caused by the negligence of the defendant, first (by incorporating a number of allegations of the first count) in administering the neosalvarsan and, second, in making a transfusion of the blood of a syphilitic person to the decedent on June 26, 1930; and this count contained an allegation that the defendant promised he would remedy his error by curing the decedent of the disease thereby caused. The third count sought a recovery for the "disease" alleged to have been caused by the negligence of the defendant in making the transfusion of blood, and, after incorporating certain allegations of the second count which alleged the promise of the defendant to cure the decedent, it alleged his failure to do so. The fourth count sought recovery of damages for mental and physical suffering, damage to reputation, and loss of consortium, and also for the expenditures incurred by reason of the defendant's negligence in making the transfusion. The complaint therefore asserts three distinct bases of recovery: first, damages for the death of the decedent caused by the defendant's negligence; second, damages for the "disease," for the mental and physical suffering of the decedent and for the expenses incurred by reason of the defendant's negligence in the trans-

fusion of blood; and, third, a recovery of damages on the basis of the breach of an agreement to cure the decedent.

The defendant's answer was, in effect, a general denial of each of the four counts; also, by way of special defense, it was alleged as to each count that the action was not brought within one year from the neglect complained of and as to the second, third and fourth counts that the action was not brought within two years from the date of the accrual of the right of action. The applicable statutes of limitation raised by this defense are General Statutes, §§ 5987 and 6016. Section 5987 provides that no action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, or whether caused by the negligence of the defendant or by his wilful, malicious or felonious act, shall be brought but within one year from the neglect complained of or from the commission of such wilful, malicious or felonious act. Section 6016, which was in force on June 26, 1930, and at the time this action was brought, provided: "No action to recover damages from any physician, surgeon, dentist, hospital or sanatorium for malpractice, error, mistake or failure to effect a cure shall be brought but within two years from the date of the accrual of the right of action."

There is some apparent confusion among the authorities as to when the Statute of Limitations begins to run in actions for malpractice. In some cases, the statute has been held to run from the date of the wrongful act or omission, while in other cases the cause of action has been held to accrue when the injuries occurred. See annotation to *Schmit* v. *Esser,* 74 A. L. R. 1318 (183 Minn. 354, 236 N. W. 622). In *Capucci* v. *Barone,* 266 Mass. 578, 579, 165 N. E. 653, the court said: "Any act of misconduct or negligence

on his part in the service undertaken was a breach of his contract which gave rise to a right of action in contract or tort, and the statutory period began to run at that time, and not when the actual damage results or is ascertained." In *Gillette* v. *Tucker*, 67 Ohio St. 106, 129, 65 N. E. 865, 871, it is said: "If evil consequences followed, and plaintiff was injured, her cause of action accrues when her injuries occurred; and if these injuries blended and extended during the entire period the surgeon was in charge of the case, her right of action became complete when the surgeon gave up the case without performing his duty." In *Schmit* v. *Esser*, supra, the Supreme Court of Minnesota stated the matter in this form (p. 358): "When does the treatment cease? So long as the relation of physician and patient continues as to the particular injury or malady which he is employed to cure, and the physician continues to attend and examine the patient in relation thereto, and there is something more to be done by the physician in order to effect a cure, it cannot be said that the treatment has ceased. That does not mean that there must be a formal discharge of the physician or any formal termination of his employment. If there is nothing more to be done by the physician as to the particular injury or malady which he was employed to treat or if he ceases to attend the patient therefor, the treatment ordinarily ceases without any formality."

The general rule, however, appears to be that where the injury was inflicted at the time of the operation and not occasioned by subsequent treatment or neglect, and there has been no fraudulent concealment by the surgeon, the period of limitation for actions of this kind commences from the date of the wrongful act or omission although its results may not then have developed. 74 A. L. R. 1318; 37 C. J. 896; 48 C. J.

1138; note, 15 L. R. A. (N. S.) 161; *Ogg* v. *Robb,* 181 Iowa 145, 162 N. W. 217, L. R. A. 1918C, 981. An action for malpractice presents a claim of a hybrid nature. In one aspect, it may be viewed as based upon negligence; in another aspect as based upon breach of contract. The term malpractice itself may be applied to a single act of a physician or surgeon or, again, to a course of treatment. The Statute of Limitations begins to run when the breach of duty occurs. When the injury is complete at the time of the act, the statutory period commences to run at that time. When, however, the injurious consequences arise from a course of treatment, the statute does not begin to run until the treatment is terminated. *Bank of Hartford County* v. *Waterman,* 26 Conn. 323, 332. In the instant case, the evidence is undisputed that Dr. Peters was not the regular attending physician of the deceased at the time her child was born. He was called in to perform the blood transfusion on June 26, 1930, and after performing the transfusion his services to the patient ceased and he did not see her again until March, 1931.

It follows that insofar as the complaint seeks to recover damages for the death of the decedent, caused by the defendant's negligence, the applicable Statute of Limitations is General Statutes, 5987, and the death having occurred on April 2, 1931, and the action having been commenced February 14, 1933, this cause of action was barred by the one year limitation expressed in the statute. Insofar as the complaint sought to recover damages for the cause of action possessed by the decedent in her lifetime for the "disease," the mental and physical suffering of the decedent and the expenses incurred by reason of the defendant's negligence in the transfusion of blood, the transfusion having occurred on June 26, 1930, and the action

having been brought on February 14, 1933, any right of recovery is barred by the two year limitation contained in General Statutes, § 6016, which was in effect when the injury to the decedent occurred and when this action was brought.

In *Hickey* v. *Slattery*, 103 Conn. 716, 719, 131 Atl. 558, we held that the provisions of General Statutes, 6015, applied only to actions for injuries caused by negligence and did not apply to an action based upon breach of contract. The right of action for death, if it was the result of a breach of contract to cure, would run from the day the death occurred, for that was the final termination of the defendant's contract, the final and complete breach. *Home Pattern Co.* v. *Mertz Co.*, 86 Conn. 495, 504, 86 Atl. 19. An action for death due to a breach of contract survives, *Porpora* v. *New Haven*, 122 Conn. 80, 95, 187 Atl. 668, subject to the limitations of General Statutes, 6016, which was then in force, and, inasmuch as the death occurred on April 2, 1931, and this action was commenced on February 14, 1933, the two year period required by § 6016 had not elapsed even if it be conceded that this section as it then stood was applicable to bar an action for death caused by breach of contract. There was evidence that on March 26, 1931, about a week before the death of the decedent, the defendant agreed to cure her of the syphilitic condition, but no breach of that contract could have resulted in producing the "disease" nor in the mental and physical suffering alleged to be due to the defendant's negligence in the blood transfusion. The sole cause of action upon which the plaintiff could recover was for the death of the decedent due to a breach of the defendant's agreement. There was evidence that the death followed immediately upon the giving of neosalvarsan in the course of her treatment by the defendant, and if the jury believed that there

was such an agreement as the plaintiff claimed, they might find the defendant liable for that death. It follows that the trial court was in error in refusing to set aside the verdict.

Error was assigned by the plaintiff in several rulings of the court upon evidence. These rulings concerned questions propounded to experts relating to the standards of care and skill required in the treatment of a disease such as that from which the plaintiff's decedent was suffering. Inasmuch as the only cause of action upon which the plaintiff could recover was for the death of the plaintiff's decedent claimed to be due to a breach of the defendant's agreement, and as the death occurred in the very course of the treatment, the death would of itself be a breach of the agreement and no question of negligent conduct on the part of the defendant in the way in which he treated the deceased is relevant to the issues presented on that cause of action. The rulings bearing upon proper practice in treating the disease would be of no importance upon a new trial restricted to the single issue of breach of the claimed contract to effect a cure.

There is error and a new trial is ordered.

In this opinion the other judges concurred.