**Melvin MITCHELL**

v.

**CITY OF HARTFORD.**

**Civ. No. H–84–1033 (MJB).**

United States District Court, D. Connecticut.

May 29, 1986.

---

David E. Kamins, Kamins & Frieland, New Britain, Conn., Kenneth J. McDonnell, James C. Wing, M. Donald Cardwell, Hartford, Conn., for plaintiff.

Scott B. Clendaniel, Grant Miller, Robert E. Beach, Jr., John P. Clarkson, Elizabeth A. Curtis, Naab & Danforth, Hartford, Conn., Scott A. Garner, James F. Meenan, Terence D. Mariani, Waterbury, Conn., for defendant.

**RULING ON THE HARTFORD DEFENDANTS' OBJECTION TO THE MAGISTRATE'S OCTOBER 9, 1985 RECOMMENDED RULING ON THE HARTFORD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

BLUMENFELD, Senior District Judge.

Several Hartford police officers and the City of Hartford (the "Hartford defendants") bring this objection to Magistrate Smith's recommended ruling of October 9, 1985, granting in part and denying in part their motion for summary judgment.

On September 21, 1984, Melvin Mitchell, the plaintiff herein, brought this action under 42 U.S.C. § 1983 alleging that the Hartford defendants and two non-Hartford police officers [1] violated Mitchell's constitutional rights in five separate incidents involving encounters he had with the police between 1976 and 1982.

In his recommended ruling Magistrate Smith addressed each of these incidents and denied summary judgment in all but the final incident, an allegedly unlawful seizure in 1982 of two automobiles owned by the plaintiff. The Hartford defendants' present objection is directed to the Magistrate's refusal to recommend summary judgment on the four earlier incidents. These will be addressed below.

I. *The 1976 and 1979 Incidents*

 Two of the four incidents at issue occurred in 1976 and 1979. Mitchell alleg-

---

**1.** The non–Hartford defendants are Gerald Peters of the Town of Winsted Police, and Thomas Brown of the City of Waterbury Police. The plaintiff alleges that at the times relevant to his complaint these officers were members of the Statewide Narcotics Task Force.

es that in 1976 several of the Hartford defendants searched his house without a warrant and without probable cause. He also alleges that in 1979 Officer Michael Daiken, a Hartford defendant, unlawfully arrested Mitchell. The Hartford defendants moved for summary judgment on these two incidents claiming that any suits for damages based upon them were barred by Connecticut's three-year statute of limitations governing tort actions. Conn.Gen. Stat. § 52–577. The Magistrate rejected the statute of limitations defense, stating that "otherwise time-barred claims may be considered to show a persistent 'pattern' or 'custom' to satisfy the § 1983 criteria for liability." Recommended Ruling at 7.

While the Magistrate's statement appears to be accurate, it does not address the precise issue presented on this motion. To understand the defendants' statute of limitations claim, it is first necessary to briefly review the law regarding municipal liability in section 1983 actions. In *Monell v. Department of Social Services,* 436 U.S. 658, 683, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978), the Supreme Court ruled that a municipality could be held liable under section 1983 "for its own violations of the Fourteenth Amendment" if the plaintiff could prove that the municipality "cause[d]" the plaintiff to suffer a deprivation of constitutional rights. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 2433–34, 85 L.Ed.2d 791 (1985) (plurality opinion per Rehnquist, J.), at 2439 (Brennan, J., concurring in the judgment). To prove the causative relationship, the plaintiff would need to show that the constitutional deprivation was visited upon him pursuant to an official governmental "policy" or established "custom." *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36; *Oklahoma City v. Tuttle,* 105 S.Ct. at 2433, 2439.

In this case Mitchell has brought suit against the City of Hartford, as well as against individual police officers, for the constitutional deprivations he alleges. As the Magistrate stated, evidence of prior incidents of unconstitutional conduct involving Mitchell, or others, may be relevant to establishing that the City of Hartford was liable for the deprivations sued upon, whether or not the prior incidents occurred within the applicable statute of limitations period. However, that is not the issue raised on this motion. Here, the Hartford defendants attack the timeliness of the filing of this action with respect to incidents which *are themselves the subject of suit.* Thus the court must consider whether these incidents, the 1976 search and the 1979 arrest, occurred prior to the applicable limitations period for filing this action.

The issue of time limitations in the filing of section 1983 actions was recently addressed by the Supreme Court in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), a section 1983 action against a New Mexico state police officer. There, the Court made several rulings of importance to this case. First, because it found that no suitable federal rule exists to determine the timeliness of section 1983 actions, the Court held that state and federal courts should turn to state statutes of limitations in choosing an appropriate time period: "[T]he length of the limitations period, and closely related questions of tolling and application, are to be governed by state law." *Id.* 105 S.Ct. at 1943 (footnote omitted). Next, citing federal interests in "certainty, uniformity and the minimization of unnecessary litigation," the Supreme Court instructed that courts should "select, in each State the one most appropriate statute of limitations for all § 1983 claims." *Id.* at 1947. Finally, the Court held that "§ 1983 claims are best characterized as personal injury actions." *Id.* at 1949. As a result, it applied New Mexico's general personal injury limitations statute to the case before it. *Id.*

In light of *Wilson v. Garcia,* it is clear that Connecticut's general personal injury statute of limitations, Conn.Gen.Stat. § 52–577, is the "one most appropriate" statute for Connecticut section 1983 claims. That statute, which states that "[n]o action founded in tort shall be brought within three years from the date of the act or omission complained of," most closely complies with the Supreme Court's directive that courts should apply the limitations

statute governing "general personal injury actions sounding in tort" to Connecticut's section 1983 claims.[2] *Wilson v. Garcia,* 105 S.Ct. at 1949.

As the complaint in this case was filed on September 21, 1984, and, as the plaintiff has offered no justification for tolling the statute,[3] only "act[s] or omission[s] complained of" that occurred on September 21, 1984 or thereafter would be timely. Consequently, while evidence of the 1976 and 1979 incidents may still be admissible at trial to show that the Hartford Police Force had a persistent "policy" or "custom" of constitutional abuse, Mitchell's section 1983 claims based upon the incidents themselves are barred by Connecticut's three-year statute of limitations. The Hartford defend-

ants' motion for summary judgment is therefore granted with respect to the 1976 and 1979 incidents.

## II. *The 1981 Murder Arrest Incident*

■ In his complaint, Mitchell also alleged that in September 1981, Hartford defendants Madison Bolden and Charles Morris made material false allegations in an application for an arrest warrant of Mitchell which caused his arrest for murder, allegedly without probable cause. It is undisputed that Mitchell was charged with murder in Connecticut Superior Court, tried, and acquitted in 1983.

On defendant's motion for summary judgment, Magistrate Smith ruled that Mitchell had raised an issue of fact as to

---

2. Another statute of limitations, Conn.Gen.Stat. § 52–584, is applicable to personal injuries caused by negligence, reckless or wanton misconduct, or by a physician's malpractice. Although this statute could perhaps be applied to section 1983 actions consistently with *Wilson v. Garcia,* the Supreme Court's directive to apply the statute governing "*general* personal injury actions sounding in tort," 105 S.Ct. at 1949 (emphasis added), suggests that section 52–584 is more appropriate. *See United Aircraft Corp. v. Int'l Association of Machinists,* 161 Conn. 79, 107, 285 A.2d 330 (1971), *cert. denied,* 404 U.S. 1016, 92 S.Ct. 675, 30 L.Ed.2d 663 (1972) ("The three-year Statute of Limitations, § 52–577, is applicable to all tort actions other than those carved out of § 52–577 and enumerated in § 52–584 or another section.")

3. Although not pursued by the plaintiff in his brief in opposition to this motion, he alleges in his complaint that the various constitutional deprivations of which he complains were the product of a "continuing conspiracy" by the Hartford defendants that lasted until 1982, the date of the last incident. This suggests the possibility that the "act or omission complained of" under section 52–577 was the "continuing conspiracy" itself, and it may be argued that since the conspiracy extended into the three-year limitations period, the incidents which occurred prior to 1981 should also not be barred from being sued upon. Keeping in mind that "the length of the limitations period, *and closely related questions of tolling and application,* are to be governed by state law," *Wilson v. Garcia,* 105 S.Ct. at 1943 (emphasis supplied), the court will take a moment to consider this argument in the context of Connecticut's statute of limitations law on "continuing wrongs."

Connecticut law recognizes a variety of "continuing wrong" exceptions to its statute of limi-

tations. These have generally been applied to correct inequitable situations that occur when the plaintiff's cause of action would otherwise be barred before he discovers the injury, *Cross v. Huttenlocher,* 185 Conn. 390, 400, 440 A.2d 952 (1981) (physician prescribes drugs to patient without warning of side effects); *Puro v. Henry,* 32 Conn.Sup. 118, 342 A.2d 65 (1975) (physician leaves surgical needle in plaintiff's abdomen), or, in a few cases, where the cause of action would be barred even before the plaintiff was injured. *Handler v. Remington Arms Co.,* 144 Conn. 316, 130 A.2d 793 (1957) (purchaser of negligently manufactured ammunition injured by it more than one year after purchase); *Bush v. Norwalk,* 122 Conn. 426, 189 A. 608 (1937) (plaintiff trips on balance beam more than one year after it is negligently left on floor—held a "continuing" danger); *see also* Note, *Continuing Negligence and the Statute of Limitations,* 32 Conn.Bar.J. 203 (1958). In other cases the "act or omission" has been held to continue until the "course of treatment" has been completed, as when a patient is under the continuous and uninterrupted care of a physician. *See Giambozi v. Peters,* 127 Conn. 380, 384–85, 16 A.2d 833 (1940) (the "injuries blended and extended during the entire period the surgeon was in charge of the case").

There was no "blend[ing] and extend[ing] of the injuries in this case. Although Mitchell alleges a "continuing conspiracy," the actual civil rights deprivations about which he complains occurred during separate incidents spaced years apart, and at the hands of different sets of police officers. Furthermore, Mitchell does not claim that the three-year statute ran before he sustained the injuries, or before he became aware of the injuries, as in the cases cited above. Thus, there was nothing to prevent Mitchell from bringing suit within three years of the dates that the 1976 and 1979 incidents occurred.

whether the defendants' warrant application contained material and intentionally false allegations that led to Mitchell's arrest without probable cause. The Magistrate relied upon an affidavit submitted by Isidoro Torres, whom the defendants identified in the warrant application as an eyewitness to the murder. In his affidavit Torres denied that he was an eyewitness to the murder, and also contradicted the defendants' affidavit accompanying the arrest warrant that he helped the police in identifying Mitchell as the perpetrator.

The Hartford defendants do not object to this aspect of the Magistrate's ruling, but instead claim that as a matter of law they cannot be held liable for the alleged unconstitutional arrest of Mitchell because the intervening issuance of the arrest warrant by a neutral magistrate broke the "chain of causation" between the officers' application for the warrant and the arrest itself.

The Supreme Court has very recently rejected the "chain of causation" defense in a similar section 1983 claim. In *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89

L.Ed.2d 271 (1986), the Court addressed the issue of whether a police "officer should not be liable because the judge's decision to issue the warrant breaks the causal chain between the application for the warrant and the improvident arrest." 106 S.Ct. at 1098 n. 7. The Court stated:

> It should be clear ... that the District Court's "no causation" rationale in this case is inconsistent with our interpretation of § 1983. As we stated in *Monroe v. Pape*, 365 U.S. 167, 187 [81 S.Ct. 473, 484, 5 L.Ed.2d 492] (1961), § 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." Since the common law recognized the causal link between the submission of a complaint and an ensuing arrest, we read § 1983 as recognizing the same causal link.

*Id.* at 1098–99 n. 7. Thus, the Hartford defendants are not shielded from liability merely because a magistrate agreed to issue the warrant.[4] Summary judgment with respect to this incident is denied.[5]

---

4. Citing *Rodriguez v. Ritchey*, 556 F.2d 1185 (5th Cir.1977), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978), the Hartford defendants also claim that a grand jury indictment of Mitchell on the same murder charge also broke the "chain of causation" between the application for the warrant and the unlawful arrest. Aside from the fact that there is nothing in the defendants' submissions to indicate that the grand jury indictment was an intervening event between the warrant and the arrest, *compare Rodriguez v. Ritchey*, 556 F.2d at 1193, the defendants have offered nothing to explain why a grand jury indictment should provide a stronger shield for a policeman's unconstitutional conduct than does a "judge's decision to issue [a] warrant." *Malley v. Briggs*, 106 S.Ct. at 1098 n. 7. The court can see no reason to draw such a distinction.

5. Perhaps because they did not have before them the Supreme Court's recent decision in *Malley v. Briggs* the Hartford defendants have not formally raised a "qualified immunity" defense to this action. The immunity defense is distinct, at least in concept, from the "chain of causation" defense addressed on this motion. *See Malley v. Briggs*, 106 S.Ct. at 1098 n. 7. In *Malley* the Supreme Court considered a section 1983 action against a police officer who applied for an arrest warrant. The warrant was signed by a judge and the plaintiff in that case was arrested, allegedly without probable cause. The

plaintiff did not contend that the police officer misrepresented any information on the warrant application.

The police officer raised defenses of absolute and qualified immunity to the section 1983 action. *See Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Court rejected the absolute immunity defense, but held that the officer was entitled to a qualified immunity, to be judged by the "objective reasonableness" standard used in a suppression hearing. *Malley v. Briggs*, 106 S.Ct. at 1098–99; *see United States v. Leon*, 468 U.S. 3405, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). As applied to the *Malley* facts, the Court formulated the test of objective reasonableness in the following manner:

> The analogous question in this case is whether a reasonably well-trained officer in [the defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.

106 S.Ct. at 1098 (footnote omitted).

If the defendants choose to raise an immunity defense in this case they should consider whether that defense applies at all to the situation presented here—where the plaintiff has raised an issue of fact as to whether the police officer misrepresented some of the information used to establish probable cause in his application for the warrant. *See Malley*, 106 S.Ct. at 1096–98;

III. *The 1981 Narcotics Arrest*

 The final incident that requires review concerns Mitchell's arrest for the sale of cocaine in 1981. On September 21, 1981, defendant Gerald Peters of the Winsted Police Department, who was then on assignment to the Statewide Narcotics Task Force, filed an application for a warrant to arrest Mitchell for narcotics violations. In the affidavit accompanying the application, Peters stated that while acting as an undercover agent in February 1981, he purchased an amount of cocaine "from one Melvin Mitchell for the sum of $100." The affidavit identified the time and place of the purchase but did not state how Peters knew that the seller was Melvin Mitchell.

On the basis of Peters' affidavit, a judicial officer issued the warrant and Mitchell was arrested on charges of selling cocaine. The arrest was executed by members of the Hartford Police Force working under Detective Frank Fallon, a defendant herein, who was then in charge of Hartford's vice and narcotics squad.[6]

Mitchell was eventually found not guilty on all charges stemming from that arrest. He now claims that he had nothing to do with the drug sale involving Peters, and further claims that he was arrested without probable cause.

In his complaint Mitchell identifies several parties that he claims were part of a "conspiracy" that was responsible for his alleged unconstitutional arrest. The conspirators include two non-Hartford policemen—Officer Peters of Winsted and Officer Brown of Waterbury—plus Hartford defendant Fallon. The liability of the non-Hartford defendants is not at issue on this motion. According to Mitchell's complaint the liability of Fallon stems from his act of "intentionally assist[ing] ... Peters ... in deliberately misrepresenting certain facts in order to obtain a warrant for the arrest of [Mitchell]."

In support of their motion for summary judgment the Hartford defendants claim that Fallon's involvement in the application for the arrest warrant was so limited that as a matter of law he could not have been part of a conspiracy to arrest Mitchell. According to the Hartford defendants, when Officer Peters purchased the cocaine in the undercover transaction mentioned in the warrant application, Peters knew that the name of the seller was "Melvin," but he was unaware of the dealer's last name. Sometime later, Peters sought the assistance of Detective Fallon in identifying "Melvin." Peters asked Fallon if he knew any drug dealers in Hartford with that name. Fallon recalled the name Melvin Mitchell and told Peters that Mitchell had prior arrests for narcotics violations. He then showed Peters a photograph of Mitchell from police files. Apparently Peters determined from Fallon's information and the photograph that Mitchell should be arrested for the narcotics sale. The Hartford defendants take the position that Fallon's participation in preparing the arrest warrant application was thus limited to providing truthful and neutral information to Peters at his request.

The Magistrate ruled that the Hartford defendants had failed to meet their burden of showing that there was no genuine issue of fact as to whether Fallon intentionally assisted Peters in deliberately misrepresenting the information in the warrant. The Court agrees.

The crux of Mitchell's theory of recovery here is that non-Hartford defendant Peters deliberately falsified information in the arrest warrant, or at least provided false information with reckless disregard for the truth, that was material to the judicial offi-

*Harlow v. Fitzgerald,* 457 U.S. at 815–19, 102 S.Ct. at 2736–37. Furthermore, they must consider the relevance, if any, of the standard established for criminal motions to suppress in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), where the police officer allegedly made intentionally false statements in his affidavit in support of a search warrant. Finally, the defendants may find it necessary to consider whether they have met all pleading requirements for raising an immunity defense in this action. *See Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

**6.** In his deposition Mitchell states that Fallon announced Mitchell's arrest to the news media as the arrest of a top narcotics dealer in Hartford.

cer's finding of probable cause. *Cf. Franks v. Delaware*, 438 U.S. 154, 156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978) (motion to suppress fruits of search will be granted if criminal defendant shows that a material false statement was included in warrant). There is no question here that Peters' statement in his affidavit that Mitchell had sold him cocaine was material to the finding of probable cause. Indeed, virtually no other information concerning Mitchell was included in the affidavit. Additionally, at this stage, the Hartford defendants do not dispute that Peters deliberately falsified the warrant as Mitchell claims.[7] Thus, viewing the facts lodged in their light most favorable to the plaintiff, it may be assumed on this motion that Peters deliberately falsified the information on the warrant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156–57, 90 S.Ct. 1598, 1607–08, 26 L.Ed.2d 142 (1970).

The next question, and the one of direct concern on this motion, is whether a legal theory exists that would allow Hartford defendant Fallon to be held liable for the unconstitutional arrest. To hold a public official liable under section 1983 the plaintiff must prove that "he *cause[d]* the plaintiff to be subjected to deprivation of his constitutional rights." *Baker v. McCollan*, 443 U.S. 137, 142, 99 S.Ct. 2689, 2693, 61 L.Ed.2d 433 (1979) (emphasis added). Questions of causation, and questions of liability in general under section 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his action." *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961); *Malley v. Briggs*, 106 S.Ct. at 1098–99 n. 7.

The Hartford defendants do not dispute that Fallon's actions were the "cause-in-fact" of the arrest, in the sense that *but for* Fallon's assistance to Peters, Peters would not have applied for the warrant to arrest Mitchell. At issue is whether Fallon can also be said to have been the legal cause of Mitchell's arrest.

According to his complaint Mitchell's legal claim against Fallon rests upon a theory of "conspiracy." There is no question that a claim of conspiracy has sufficiently established antecedents in the common law of torts to permit its use in proving liability under section 1983.[8] *See Monroe v. Pape*, 365 U.S. at 187, 81 S.Ct. at 484; *Malley v. Briggs*, 106 S.Ct. at 1098–99 n. 7. Left to be determined is whether the Hartford defendants have met their burden of showing that, as a matter of law, Fallon was not involved in such a conspiracy.

In the federal courts a conspiracy has been defined as a "combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means." *Pettibone v. United States*, 148 U.S. 197, 203, 13 S.Ct. 542, 545, 37 L.Ed. 419 (1893); *see also Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 465, 41 S.Ct. 172, 176, 65 L.Ed. 349 (1921). Although agreement between the parties to a conspiracy "is the gist of the offense," *United States v. Borelli*, 336 F.2d 376, 384 (2d Cir.1964), the "formalities of an agreement are not necessary and are usually lacking since the mark of a successful conspiracy is secrecy." *United States v. Varelli*, 407 F.2d 735, 741 (7th Cir.1969), *cert. denied*, 405 U.S. 1040, 92 S.Ct. 1311, 31 L.Ed.2d 581 (1972). The agreement may be shown "if there be concert of action, all the parties working together understandingly, with a

---

**7.** Officer Peters, who is also a defendant in this action, has filed a cross-claim against Fallon and the other co-defendants.

**8.** At common law, the original writ of "conspiracy" was employed in the case of "combinations of two or more persons to abuse legal procedure, and was the forerunner of the action for malicious prosecution." Prosser, *Law of Torts, Fourth Ed.* § 47 at 293 (1971). Closely associated to the writ of conspiracy was the concept of the "joint tort," which meant "vicarious liability for concerted action." *Id.* at 291.

> This principle, somewhat extended beyond its original scope, is still law. All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts done for their benefit, are equally liable with him. *Id.* at 292.

single design for the accomplishment of a common purpose." *Marino v. United States*, 91 F.2d 691, 694 (9th Cir.1937); Prosser § 47 at 292 ("Express agreement is not necessary, and all that is required is that there be a tacit understanding."). "[F]or a man to be held for joining others in a conspiracy he 'must in some sense promote their venture himself, make it his own.'" *United States v. Borelli*, 336 F.2d 376, 385 (2d Cir.1964) (Friendly, J.) (quoting *United States v. Falcone*, 109 F.2d 579, 581 (2d Cir.) (L. Hand, J.), *aff'd*, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940).

Here, the alleged unlawful purpose of the conspiracy was the arrest of Mitchell without probable cause, a violation of the fourth amendment by virtue of its incorporation into the fourteenth amendment. *Baker v. McCollan*, 443 U.S. at 142, 99 S.Ct. at 2693. On this motion for summary judgment the only remaining question is whether the Hartford defendants have carried their burden of proving that there is no genuine issue of fact relating to the existence of such a conspiracy between Fallon and Peters. Fed.R.Civ.P. 56(c). They have not done so here. Assuming that Peters deliberately falsified the information on the warrant, it could conceivably be proven by plaintiff at trial that when Fallon provided Peters with Mitchell's name and photograph, Fallon knew that Peters would apply for an arrest warrant of Mitchell and was aware that the information provided on the warrant would be false. If proven, this behavior could amount to "concerted action," both parties working together understandingly, "with a single design for the accomplishment of [an unlawful] purpose"—the unconstitutional arrest of Mitchell. *Marino v. United States*, 91 F.2d at 694. That Hartford policemen working under Fallon participated in the execution of the warrant, and that Fallon himself appears to have announced the arrest to the news media, could lend additional proof at trial of the existence of such a conspiracy. *See United States v. Borelli*, 336 F.2d at 385. In sum, the Hartford defendants have failed to foreclose the possibility that Mitchell will prove at trial that Fallon knowingly assisted Peters in the deliberate filing of a false affidavit for the purpose of arresting Mitchell without probable cause.

The motion for summary judgment with respect to this incident is denied.

## IV. *Conclusion*

The Hartford defendants have objected to Magistrate Smith's ruling on their motion for summary judgment. After having considered these objections, the court hereby grants summary judgment in favor of the Hartford defendants with respect to plaintiff's claims relating to the 1976 search of plaintiff's house, the 1979 arrest and imprisonment, and the 1982 automobile searches and seizures. Summary judgment is denied with respect to the 1981 murder arrest incident, and the 1981 drug arrest incident, as described in this opinion.

SO ORDERED.