[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. Factual and Procedural Background
By way of a second amended complaint, dated April 14, 1994, the plaintiff, Sandra Main, brought a two count action against the defendant, Dr. Jerome Roth, D.D.S. The first count alleges negligence in the form of dental malpractice. The second count alleges breach of contract.
The defendant Roth filed four amended special defenses on November 7, 1994. The defendant's first special defense claims that some or all of the plaintiff's claims are barred by the statute of limitations. The second and third special defenses claim contributory negligence on the part of the plaintiff. The fourth and final special defense claims that the plaintiff did not mitigate her damages. On March 8, 1995, the plaintiff filed a general denial to each of the defendant's special defenses.
Trial to the court commenced on March 7, 1995, and continued on March 8 and March 9, completing on March 10, 1995.
During the course of trial the plaintiff called the following witnesses: the plaintiff, Sandra Main; the defendant, Dr. Jerome Roth; her expert, Dr. Douglas Macko, D.D.S.; Patricia McGowan, an employee in the defendant's dental office; Leanor Main, the plaintiff's mother; and Attorney Grant Miller, CT Page 5341 defendant's insured's former counsel. The defendant called four witnesses: Dr. Merrill Dunn, D.D.S., a former dentist of the plaintiff; the defendant Roth; the defendant's employee, Patricia McGowan; and defendant's expert, Dr. John Dreslin, D.D.S.
At the conclusion of evidence, the court ordered both parties to file simultaneous briefs and proposed findings of fact on or before the close of business, March 31, 1995.
II. Discussion
A. Burden of Proof, Generally
In the usual civil case, a party satisfies her burden of proof if the evidence presented establishes the issue in favor of that party by a "fair preponderance of the evidence".Vigorito v. Allard, 143 Conn. 70, 71 (1955). "Fair preponderance" means the better or weightier evidence; a party is not required to prove a fact to an absolute certainty but merely prove that a fact is more likely than not to be true. TerminalTaxi Co. v. Flynn, 156 Conn. 313, 318 (1968). Such preponderance is not judged by the number of witnesses but rather the quality of the evidence presented. Verdi v. Donohue, 91 Conn. 448,450 (1917).
Just as the plaintiff must prove her case by this fair preponderance of evidence standard, so too must the defendant prove every essential element of any special defense by a preponderance of the evidence. Marley v. New England TransportationCo., 133 Conn. 586, 590 (1947).
"[I]f the evidence on a particular issue [is] in balance or equipoise, the party on whom the burden of proof rests on that issue [will have] failed to sustain its burden of proof." Bergmann v. Newton Buying Corporation, 17 Conn. App. 268,272 (1989).
1. Negligence
The plaintiff in the instant case has alleged that the defendant was negligent in his treatment of her dentition. The plaintiff must prove that the defendant was negligent by a fair preponderance of the evidence and must further prove that the defendant's negligence was the cause of her injuries. CT Page 5342Palombizio v. Murphy, 146 Conn. 352, 358 (1959). As to malpractice specifically, the plaintiff must prove that 1) there is a requisite standard of care for the treatment administered; 2) the defendant deviated from that standard of care; and 3) there is a causal connection between that deviation and the plaintiff's claimed injury. Keans v. Bottiarelli, 35 Conn. App. 239,241-242 (1994); Williams v. Chameides, 26 Conn. App. 818,822 (1992).
2. Contract
In her second count, the plaintiff alleged in her complaint that a contract existed between the plaintiff and the defendant regarding the treatment of her teeth, and the defendant breached that contract. The plaintiff must prove that a contract existed, with all of its essential terms, Vigorito,
supra at 71, see also Fisher v. Jackson, 142 Conn. 734 (1955), including consideration. Russell v. Slade, 12 Conn. 455, 462
(1838). If the plaintiff can establish that a valid contract existed, then the plaintiff must also prove that the defendant breached that contract. Pacileo v. Pacileo, 148 Conn. 728, 730
(1961). If the plaintiff establishes by the preponderance of the evidence that the defendant did breach the contract, then the plaintiff must also prove that her claimed damages are causally related to the breach.
3. Contributory Negligence
In two of his four special defenses the defendant claims that any injuries which the plaintiff may have suffered to her dentition were caused by her own contributory negligence, including broken appointments and her failure to employ measures to ensure the optimal treatment outcome. Pursuant to Connecticut General Statutes, § 52-114, the burden is on the defendant to both plead and prove contributory negligence.Goodman v. Norwalk Jewish Center Inc., 145 Conn. 146, 148
(1958). Marley, supra.
4. Mitigation of Damages
In his third special defense the defendant alleges that the plaintiff is responsible for her own dental problems as she failed "to mitigate her damages in that she failed to take reasonable action to lessen her damages; her damages were in fact enhanced by such failure; and her damages could have CT Page 5343 been avoided". A plaintiff alleging injury does have a duty to minimize damages and to secure appropriate treatment. Morro v.Brockett, 109 Conn. 87, 92 (1929). The question which needs to be answered is would a reasonably prudent person situated as the plaintiff was and knowing what she did have pursued other treatment. See Lange v. Hoyt, 114 Conn. 590, 597 (1932).
B. Statute of Limitations
As the first of his four special defenses, the defendant alleges that Connecticut General Statutes, § 52-584 bars some or all of the plaintiff's claims. A special defense is the proper procedure for raising a statute of limitations claim. Lubas v. McCusker, 153 Conn. 250 (1965). Since the determination of this issue may be dispositive of some or all of the issues before this court, the court will discuss this issue now prior to beginning a discussion of the parties' respective claims of law.
Section 52-584 states in full:
 No action to recover damages for injury to the person, or to real or personal property, caused by the negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed.
The main purpose of the statute of limitations is to prevent enforcement of stale claims and assure that witnesses are available for defense. Dotolo v. Petrucelli,
3 Conn. Cir. 687 (1966), certification denied, 156 Conn. 662 (1968);Beauvillier v. Finn, 25 Conn. Sup. 361 (1964). CT Page 5344
Within the body of law regarding professional malpractice, there exists a sub-body of law concerning a "continuing course of conduct". When the action sued upon consists of continuing course of tortious conduct, the Connecticut statute of limitations does not begin to run until the course of conduct is complete. Hamilton v. Smith, 773 F.2d 461 (Conn. 1985). See also Giambozi v. Peters, 127 Conn. 380 (1940).
In the instant case, the plaintiff, Sandra Main, alleges in paragraphs three and five of her amended complaint, dated April 14, 1994, that "on or about May of 1988" she "sought and engaged the services of the defendant for the purposes of treating the plaintiff." According to these allegations, her "treatment continued through September 19, 1991". Evidence at trial was contradictory as to when plaintiff actually completed treatment with the defendant. The defendant's records (Exhibit, Defendant's 1) show and the defendant testified that plaintiff's last appointment for treatment occurred on July 11, 1991. Defendant's records also show that two subsequent appointments scheduled for the plaintiff, July 25, 1991 and August 1, 1991, were cancelled by the plaintiff.
The plaintiff and her mother testified that they did speak with the defendant in his office on September 19, 1991. Plaintiff's mother, Leanor Main, testified that September 19 was the date before her daughter was to see Dr. Koops for a tonsillectomy. Mrs. Main specifically stated that the defendant, Dr. Roth, "did not treat her [daughter]" that day and he did not schedule a follow-up visit. Despite this testimony, the plaintiff still claims that she "treated" with the defendant on September 19, 1991.
To support her claim, plaintiff introduced a 1991 calendar kept by her mother (Exhibit, Plaintiff's V) which she claims is proof of her treatment with Dr. Roth on September 19, 1991. An appointment is noted on that date with Dr. Roth in the space provided. Plaintiff claims that the court should pay more credence to this document in terms of when she had appointments at which Dr. Roth treated her than to Dr. Roth's treatment and billing statement. (Exhibit, Defendant's 1) The court is not persuaded by this argument. A review of the calendar, which hung in the Main's kitchen on the refrigerator and to which any family member had access, failed to record fourteen scheduled appointments out of a total of nineteen scheduled appointments with Dr. Roth, between January and July of CT Page 5345 1991, appointments for which she received treatment (2/19/91, 4/4/91, 5/2/91, 5/13/91, 6/13/91, 6/24/91, 6/27/91, 7/11/91, and 8/1/91) and appointments which she failed to keep (1/21/91, 2/12/91, 3/18/91, 4/8/91, and 4/22/91).
The word "treatment" as defined in The American HeritageDictionary, Second College Edition, 1991, states:
1. The act or manner of treating, handling.
 2. The application of remedies with the object of effecting a cure; therapy.
Based on the evidence before this court, this court finds that the defendant did not provide treatment to the plaintiff on September 19, 1991. He did not "handle" her; he did not "apply remedies"; and he did not provide her with any dental therapy.
On that basis, this court finds that as to the negligence count, even acceding to the plaintiff's argument that the defendant's treatment of her was a continuing course of conduct, that continuing course of conduct terminated on July 11, 1991, the last date the defendant actually administered treatment to the plaintiff.
"[F]rom a very early date in this state, the time when the action is regarded as having been brought is the date of service of the writ upon the defendant." Seaboard BurnerCorporation v. DeLong, 145 Conn. 300. 303 (1958).
Plaintiff's lawsuit is dated September 8, 1993, with a return date of October 5, 1993. According to the sheriff's return, the defendant was served by abode service on September 20, 1993. This date is some seventy-one days too late. Section 52-584 of the statutes requires an action to be commenced within two years. Two years expired on July 11, 1993.[1] Accordingly, plaintiff's entire negligence claim, count one of her complaint, is barred by the two year statute of limitations.
C. Contract Count
In plaintiff's second count of her complaint, she repeats the first eleven paragraphs from her first count sounding in negligence/medical malpractice. To this she adds paragraph 12 which states: CT Page 5346
 As a result of the negligence and carelessness of the defendant in his improper treatment of the plaintiff, she was forced to expend sums for treatment over a 3 year period which were not helpful to her condition and which constituted a breach of their contract and the funds should be returned.
The plaintiff presented no evidence at trial of any express written contract between her and the defendant. She must then be relying on a theory of implied contract. Connecticut does recognize implied contracts as long as the essential elements of a contract are met. These elements can be inferred from the acts and conduct of the parties.Brighenti v. New Britain Shirt Corporation, 167 Conn. 403
(1974). However, this court is unaware of any support for a cause of action sounding in contract which is premised on the alleged negligent performance of a professional. It is true that some malpractice actions may be brought in both tort and contract, Giambozi v. Peters, 127 Conn. 380 (1940), if there are sufficient allegations to sustain such a cause of action; i.e. the physician verbally commits to the patient "an agreement to cure". Id. at 386-387. Conversely, simply because the plaintiff calls her relationship with the defendant a contractual one does not make it so.
Plaintiff's relationship with the defendant was a patient/dentist relationship in which she claims the defendant performed negligently. This court can find no evidence introduced at trial which shows that the defendant promised a result or agreed to any contract terms. There was neither testimony nor documentation that the plaintiff and the defendant intended to enter into some type of binding agreement. Negligence and/or malpractice is what this case is about. Consequently, this court will not recognize a negligence claim "dressed up" as a contract claim.
Finally, plaintiff's argument as relates to the breach of contract claim substantiates this court's position. Plaintiff argues ". . . should this Court find a breach of the standard of care, then the Court should logically infer that this contract was breached." (See Plaintiff's post-trial brief at p. 13) It appears that the plaintiff is arguing that these two causes of action are inextricably bound together. If that CT Page 5347 is in fact the plaintiff's argument, this court is precluded from finding a cognizable cause of action for breach of contract since no negligence cause of action remains as it was barred by this court.
D. Claims of Law
1. Plaintiff
This court has dismissed plaintiff's negligence count as barred by the statute of limitations. This court is not persuaded that plaintiff's contract claim is anything more than a reiteration of her negligence claim clothed in another name, and therefore, finds there is no valid contract claim. These two determinations constitute a defendant's verdict in this case.
Even though the court will enter judgment based or. the statute of limitations, the court will still make findings of fact on the negligence claim to ensure that the record is complete.
The plaintiff herself had an extremely poor memory both on direct and cross-examination as to the treatment the defendant rendered; what conversations, if any, the defendant had with her about the condition of her dentition; and what appointments she attended and what appointments she missed. The defendant's record shows that the plaintiff missed a total of fifteen appointments during an eighteen month period. (Exhibit, Defendant's 1) The record further shows that the plaintiff sought no dental treatment between the periods of mid-August, 1988, and mid-February, 1989, a period of six months. Similarly, she did not seek dental treatment from the defendant or any other dentist between the time periods of mid-March of 1989 to late October of 1990, a period of some nineteen months.
Despite this evidence, and no credible contradictory evidence, the plaintiff testified that she treated with the defendant on a regular basis. She was unable to explain why she had not treated during these two extensive time periods. She further testified that from the outset of her treatment with the defendant in May of 1988 until she terminated treatment with him in 1991, she was in constant pain. Despite this constant pain, she did not convey this to the defendant nor did her mother seem aware of it; her mother testified that Sandra CT Page 5348 was receiving ongoing dental treatment from Dr. Roth. Despite this constant pain, the plaintiff testified that she enjoyed a very normal diet; as to her eating habits she testified, "she ate regular meals; she ate everything" and everything, she testified, included "steak".
At the time that the plaintiff started treating with the defendant, she was living with her parents at home and was almost fifteen years of age. Plaintiff's mother testified that she thought her daughter was receiving regular treatment from Dr. Roth, and she was unaware that her daughter was in such pain. One finds this difficult to believe since the plaintiff was living at home and saw her mother on a daily basis.
The court finds it difficult, at best, to place much credibility on either the plaintiff's testimony or that of her mother. Neither had a good memory, and the only documented evidence presented by the plaintiff, aside from the defendant's own treatment records, regarding her appointments was the calendar from 1991 to which this court previously referred. (Exhibit, Plaintiff's V) The determination of the credibility of witnesses is solely within the province of the trier of fact.Raia v. Topehius, 165 Conn. 231, 235 (1973).
As to the issue of negligence then, it is this court's opinion that this case turns on the comparative testimonies of the plaintiff and the defendant; the plaintiff's expert, Dr. Macko; and the plaintiff's expert, Dr. Dreslin. As to the issue of negligence then, it is this court's opinion that this case turns on the comparative testimonies of the plaintiff and the defendant; the plaintiff's expert, Dr. Macko; and the plaintiff's expert, Dr. Dreslin. Testimony of an expert witness is necessary to establish both the standard of proper professional skill or care on the part of a physician ". . . and that the defendant failed to conform to that standard of care." Campbell v. Palmer, 20 Conn. App. 544,548 (1988). As previously cited, defendant's burden of proof on any special defense is also by a fair Preponderance of the evidence.
The defendant, Dr. Roth, testified that he attempted to treat the plaintiff and control the rampant carries in her dentition, but she failed to attend her regularly scheduled appointments. He testified that her attendance revolved around her level of pain; if Ms. Main had a toothache, she showed up CT Page 5349 for her appointment or made an emergency appointment. (Exhibit, Defendant's 1) Dr. Main stated that her lack of concern to remedy what began as fairly routine, continued to exacerbate the deterioration of her dentition over time. He testified that on both occasions when the plaintiff failed to appear for appointments over extended months, the carries in her dentition severely multiplied. Also, he was prevented from completing root canals which he had begun and for which Ms. Main did not keep her follow-up appointments. (Exhibit, Defendant's 2) Ms. Main has also told him during her course of treatment that she wanted to save all her teeth.
Plaintiff's expert, Dr. Douglas Macko, is a solo practitioner certified in pediatric dentistry. He began treating the plaintiff on September 26, 1991, after a referral from Dr. Koops, the surgeon who performed her tonsillectomy. He testified that plaintiff had severe oral disease (infection, cavities, poor occlusion) which surprised him when she told him she had been seeing another dentist regularly, told him she had good oral hygiene, and told him she had a reasonable diet. Aside from plaintiff's own self-serving history regarding her prior treatment and care, Dr. Macko did eventually review some of the plaintiff's records received from Dr. Roth, although there was an intimation that her records were intentionally lost.
Dr. Macko testified that in his expert opinion Ms. Main suffered from soft tissue disease which was caused by the destruction of her dentition and areas of plaque. Dr. Macko concluded that most of Dr. Roth's treatment failed, many fillings fell out, root canals were not completed, one completed root canal had a perforated root, and teeth should have been extracted or crowned. Based on this analysis, Dr. Macko stated that the defendant did deviate from the standard of care; his work was poorly done, incomplete, and failed in a short period of time. Dr. Macko testified that the plaintiff's condition was treatable; he treated her. It should be noted that Dr. Macko's treatment of the plaintiff included extractions and crowns, procedures which he felt Dr. Roth, the defendant, should have used.
Dr. Macko admitted he did not have any way of knowing how plaintiff's condition changed from 1988 to 1991, the term of Dr. Roth's treatment. He stated that in dental offices dental records can easily be misplaced or lost. His own records CT Page 5350 as to plaintiff's treatment were inaccurate (his records show tooth #13 as crowned when it in fact was not crowned; he failed to charge for a bridge). He admitted that not listing on the patient's chart a phone call to a patient for a missed appointment did not constitute malpractice. He stated that a treatment plan for a patient was important and admitted that that plan could be done be charting alone, as Dr. Roth had done. He admitted that such charting did not constitute a breach of the standard of care. He clearly stated that a professional can make a mistake and not commit malpractice.
Defendant's expert, Dr. John Dreslin, is a certified, general dentist since 1968 who takes root canal referrals and has been practicing in Waterford, Connecticut in group practice since 1980. He reviewed Ms. Main's dental records and x-rays as well as the depositions of Dr. Roth, Dr. Macko, and Ms. Main. Based on his review he testified that Dr. Roth met the standard of care and acted as a reasonably prudent dentist in Connecticut would have acted in treating the plaintiff. He stated that the fillings that Dr. Roth made on various teeth were reasonable, those teeth were restorable at the time he filled them, and crowns were not necessary at that time. He agreed with Dr. Macko that Dr. Roth had perforated the root on tooth #10 and therefore, overfilled it. He emphatically stated, however, that perforation of a root happens sometimes (when the root is curved as it was on tooth #10) and such a perforation does not constitute a breach of the standard of care. He stated that Dr. Roth had a treatment plan for Ms Main which could be followed by viewing his chart of her: Dr. Roth had divided the plaintiff's mouth into quadrants and was working on one quadrant at a time. (Exhibit, Defendant's 2) He stated that Dr. Roth was precluded from getting to all quadrants because the plaintiff missed appointments and terminated her treatment with Dr. Roth before he had an opportunity to complete his work. He testified that the majority of Dr. Roth's fillings did not fail and reviewed each tooth with a filling to show that to the court. (Exhibits, Plaintiff's L, M1 thru M3, 01 thru 02, R1 thru R2 and Defendant's 4, 5, and 6) Further, he stated it is not the dentist's responsibility to compel the patient for treatment; broken appointments do not require any follow-up by the dentist's office but common practice is to have the office call to reschedule the appointments which the defendant testified was done for all Ms. Main's missed and/or broken appointments. Finally, he concluded that the standard of care in this case CT Page 5351 was to fix the decay and prevent further decay. In his expert opinion, this is what the defendant did to the extent that the plaintiff allowed him to in light of her missed appointments and termination of treatment with him prior to treatment being completed.
This court finds the expert testimony of Dr. Dreslin, defendant's expert, to be more persuasive. After fully weighing the expert testimony, it is this court's opinion that many of the decisions which Dr. Roth made for Ms. Main's treatment were judgment calls, i.e. fill or crown a tooth; fill or extract a tooth. Dr. Roth's judgment regarding treatment is more conservative and less expensive than Dr. Macko's course of treatment. However, the choice of one treatment over another treatment, both being acceptable standards of care in the profession, does not constitute malpractice.
This court, therefore, finds that Dr. Roth's treatment of the plaintiff, although conservative, did not constitute malpractice. There is no question that Dr. Roth could keep better records and have a better filing system, but our society, fortunately, has not yet reached the point where such "old-fashioned" filing practices rise to the level of negligent malpractice.
Since this court does not find that the defendant committed malpractice if there were still a viable claim which was not barred by the statute of limitations, there is no reason to discuss defendant's special defenses of contributory negligence and plaintiff's alleged failure to mitigate damages. It should be noted, however, that the court has already discussed these defenses peripherally in its discussion of defendant's alleged negligence.
III. Conclusion
In sum, the court finds that the defendant's first special defense, statute of limitations, controls as to the plaintiff's claims of negligence. The plaintiff's entire negligence action is barred for failure to bring it within the statute of limitations. Moreover, even assuming arguendo that the negligence action was no barred, as this court discussed in the body of this opinion, it does not find that the plaintiff sustained her burden of proof by a fair preponderance of the evidence as to negligent malpractice by the defendant. CT Page 5352
The court finds no evidence of any contract between the plaintiff and the defendant.
Accordingly, judgment enters for the defendant on both counts of plaintiff's complaint. Since judgment enters for the defendant, the court makes no specific finding as to the other special defenses alleged by the defendant against the plaintiff.
SUSAN B. HANDY JUDGE, SUPERIOR COURT