[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT LOBDELL'S MOTION FORSUMMARY JUDGMENT (DOCKET ENTRY NO. 110)
The facts essential for this motion are not in dispute. The plaintiff underwent a biopsy of his lymph nodes on September 26, 1983 at St. Vincent's Hospital, which was performed by Dr. Vincent Donnelly. On September 27, 1983, the tissue was examined at St. Vincent's Hospital by Dr. David H. Lobdell, a servant or employee of the hospital, working in its Pathology Department. Dr. Lobdell issued a report that the sample evidenced "atypical lymphoid hyperplasia, cervical lymph node." It was not until November, 1994, that the plaintiff was informed that he had cancer.
In his suit instituted against Dr. Lobdell and St. Vincent's Hospital (May 16, 1995) the plaintiff claimed that Dr. Lobdell failed to diagnose non-Hodgkins Lymphoma, incorrectly reported pathology findings, incorrectly diagnosed Lymphoid Hyperplasia, failed to consult with other pathologists regarding the diagnosis, failed to discuss the pathology finding and diagnosis with the referring surgeon and failed to consult with an oncologist. He further claims that the defendant from September 26, 1983 and continuously thereafter undertook the care and treatment monitoring and supervision of the plaintiff.
According to Dr. Lobdell's affidavit dated June 6, 1997, his examination of the tissue on September 26, 1983, was the only CT Page 13760 medical service ever performed by the defendant for the plaintiff. There is no claim that he was ever the plaintiff's family physician, his treating physician or that he in fact ever met the plaintiff. As is typically the case in these situations, a biopsy tissue is sent to the pathology department of a hospital for analysis and there simply is no patient contact with the pathologist. There is no claim that Dr. Lobdell had any contact with the plaintiff after his report dated September 29, 1983, and in fact there is nothing in the complaint concerning the plaintiff's condition from September of 1983 until November of 1994, more than eleven years later. The plaintiff has filed no counter affidavits evidencing any other form of relationship between the parties.
The defendant Lobdell has moved for summary judgment as to count two and four of the complaint on the basis that the claims are barred by the applicable Statute of Limitations, § 52-584
of the Connecticut General Statutes, which provides in part:
 No action to recover damage for injury to the person. . . caused by malpractice of a physician. . . shall be brought but within two years from the date when the injury was first sustained or discovered. . . except that no such action may be brought more than three years from the date of the act or omission complained of. . . . (Emphasis added.)
The case was presented to the court on the nonarguable calendar presumably because when the original motion dated September 29, 1996 was reclaimed it failed to request oral argument. Neither party moved pursuant to Practice Book § 211 (A) (3) for oral argument.
Both parties correctly set forth the standard for summary judgment and the court will dispense with repeating it. The defendant's simple proposition set forth in the affidavit in support of his motion is that the three year statute of repose in § 52-584 had expired prior to the commencement of this malpractice lawsuit. Concededly the relevant "date of the act or omission complaint of" as that phrase is used in § 52-584 is "the date when the negligent conduct of the defendant occurs and. . . not the date when the plaintiff finally sustains damage." Vilcinskas v. Sears, Roebuck Co., 144 Conn. 170, 173
(1956). The Connecticut Supreme Court has held in Stein v. Katz, CT Page 13761213 Conn. 282, 285 (1989) that in the medical malpractice context that a lawsuit commenced more than three years from the date of the negligent act or omission complained of is barred by the statute of limitations of § 52-584 regardless of whether the plaintiff had not, or in the exercise of care, could not reasonably have discovered the nature of the injuries within that time period.
The court has also recognized that the statute of limitations in the proper circumstances may be tolled under the continuing treatment or continuing course of conduct doctrines, thereby allowing a plaintiff to commence his lawsuit at a later date.Cross v. Hutten Locker, 185 Conn. 390 (1981); Connell v. Colwell,214 Conn. 242, 252-53 (1990). The question then remains is there any disputed fact as to whether either of these doctrines apply, and this court believes there is none.
Both parties cite, quote from and rely on the case ofBlanchette v. Barrett, 229 Conn. 256 (1994), to support their respective positions. The facts in that case are completely different than the facts in this case. There the defendant had been the plaintiff's family physician from 1973 until January of 1985, the defendant had seen her regularly, provided routine breast examinations and last saw her on January 10, 1985 when he and she both noted a lump in her left breast. He ordered a mammogram which was negative on January 15, 1985 and that was the last time he saw her. In May of 1987 she was diagnosed by another doctor with breast cancer.
The court here must determine if there is any genuine issue as to any material fact concerning either the continuing treatment exception or the continuous course of conduct exception to the statute of limitations on the facts of this case, and they must be considered separately. Each of these doctrines is clearly fact bound.
In Blanchette, the court stated "when the injurious consequences arise from a course of treatment, the statute does not begin to run until the treatment is terminated." Giambozi v.Peters, 127 Conn. 380. In Giambozi, the court quoted from a Minnesota case that defined the cessation of treatment as follows:
 So long as the relation of physician and patient continues as to the particular injury CT Page 13762 or malady which [the physician] is employed to cure, and the physician continues to attend and examine the patient in relation thereto, and there is something more to be done by the physician in order to effect a cure, it cannot be said that the treatment has ceased."
Applying that standard, the court correctly found a continuous treatment in Blanchette, but none exists here. There is simply no dispute that all that Dr. Lobdell did was analyze a biopsy specimen in September of 1983 and had never seen, let alone treat, the plaintiff before, during or after that event.
As to the alternative, continuing course of conduct doctrine, the Supreme Court stated in Blanchette, supra, p. 275:
 In its modern formulation we have held that in order "to support a finding of a `continuing course of conduct' that may toll the statute of limitations, there must be evidence of a breach of duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. Where we have upheld a finding that a duty continued to exist after the cessation of the `act or omission' relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of defendant related to the prior act.
Again, in this case, there is no evidence of a special relationship between the parties at any time or any subsequent wrongful conduct of the defendant related to the prior act. There is no genuine issue as to any material fact concerning the existence of an ongoing physician-patient relationship that had not terminated in September of 1983 or any subsequent wrongful conduct of the defendant after the alleged misdiagnosis in 1983. None of the factors supporting either the continuous treatment or continuous course of conduct doctrines found to exist inBlanchette exist in this case.
The plaintiff seems to be saying that this court cannot CT Page 13763 entertain this motion because the jury has not heard his experts. The court is aware of no case that would preclude it from granting summary judgment if the facts warrant it. The plaintiff has offered no proof by affidavit to support the existence of the continuous treatment doctrine or the continuing course of conduct doctrine.
There is also no continuing duty to warn under Connecticut law. As the Supreme Court stated in Blanchette, supra, at p. 284,
 "More fundamentally, we disagree with the premise that a physician who has performed a misdiagnosis has a continuing duty to correct the diagnosis in the absence of proof that he subsequently learned that his diagnosis was incorrect. While there may be instances in product-liability situations where a continuing duty to warn may emanate from a defect, without proof that the manufacturer actually knew of the defect (citations omitted), the same principle does not apply to a physician's misdiagnosis. To apply such a doctrine to a medical misdiagnosis would, in effect, render the repose part of the statute of limitations a nullity in any case of misdiagnosis. We do not think that the language or policy of the statute permits such a reading."
The plaintiff places great weight on the comment of Dr. Lobdell in his letter to a Dr. Barry Meisenberg dated October 19, 1994, enclosing one original slide and the original pathology report concerning the plaintiff (exhibit D) attached to the plaintiff's brief dated May 2, 1997. Whatever that comment may suggest as to the original diagnosis, it does nothing to support the factual predicate necessary to support either the continuous treatment or continuous course of conduct doctrines that would toll the statute of limitations. It does not in its most favorable interpretation for the plaintiff constitute proof that Dr. Lobdell subsequently learned that his original diagnosis was incorrect as was required in Blanchette.
The motion for summary judgment as to the second and fourth counts of the plaintiffs' complaint is granted. CT Page 13764
The defendant has also moved for summary judgment as to the fourth count claiming damages for the son of Mr. Witt for loss of filial consortium. That type of claim has never been accepted by either of our appellate courts and most lower court decisions do not allow it. The motion is also granted as to the fourth count on that basis. The defendant Lobdell's brief contains voluminous support for this decision which will not be repeated here.
GORMLEY, J.