On June 28, 1976, the court heard the following three motions in the above case: (1) an amended motion to preserve and disclose court records; (2) an amended motion for the disclosure of court records; and (3) an objection to the disclosure of court records. To put this court's decision into full perspective, it is necessary to state the history of the incident relating to those motions.
On May 8, 1973, Clarence Marsella, a security agent of The Southern New England Telephone Company, hereinafter referred to as SNET, complained to the Danbury police that toll fraud was being committed through telephone number 743-7445, the number of David Cutler. As a result of that complaint, a search warrant was issued for Cutler's premises. The execution of the search warrant resulted in the seizure of an electronic device, commonly known as a "Blue Box," and a large number of documents, many of which related to the use of that device.
In May of 1973, a criminal action was instituted charging David Cutler with larceny and criminal mischief. The action progressed through pretrial proceedings, including hearings on Cutler's plea in abatement and his motion to suppress, a memorandum of decision on which was written by Honorable Milton H. Belinkie on April 10, 1975. The criminal action was nolled on June 16, 1975.
By writ, summons and complaint, dated April 28, 1976, Cutler instituted a civil action against the American Telephone and Telegraph Company, hereinafter referred to as A T T, and SNET. The thrust of Cutler's complaint is that the alleged actions of SNET in monitoring Cutler's telephone service and in filing a complaint with the police *Page 160 
were unlawful. The alleged actions of SNET are alleged to have been performed by it as the agent of or in concert with A T T. Cutler alleges in the civil action that as a consequence of the actions of SNET and A T T he "has suffered great damage, including loss of income, loss of employment capability, loss of esteem in the community, incurred substantial legal fees, and loss of earnings potential."
The complaint in the civil action is in five counts. The first count claims a violation of chapter 959a of the General Statutes. The second count claims that the statute mentioned in the first count is unconstitutional. The third count claims a violation of certain regulations of the public utilities commission. The fourth count claims that SNET "maliciously procured the arrest and prosecution of the plaintiff." The fifth count attempts to tie in A T T by alleging that SNET acted as the agent, servant, or employee of or in concert with the defendant A T T.
Since the criminal action was nolled on June 16, 1975, under General Statutes § 54-90 the following will happen: (a) Under § 54-90 (c), all police and court records and the records of the prosecuting attorney pertaining to the charge will be erased after July 16, 1976, thirteen months after the entry of the nolle in the case. (b) Under § 54-90 (e), after July 16, 1976, those records, on the request of David Cutler, may be physically destroyed.
SNET and A T T are seeking to prevent that by requesting, under the provisions of General Statutes § 54-90 (f), that the court order disclosure of all police and court records and records of the prosecuting attorney, or that those records be preserved against physical destruction during the pendency of the civil action. SNET and A T T *Page 161 
feel that the civil action instituted against them by Cutler is an action for false arrest within the meaning of § 54-90 (f).
Cutler claims that the civil action instituted by him is not an action for false arrest within the meaning of the above statute. He claims that the civil action is one for malicious prosecution.
General Statutes § 54-90 (f) reads as follows: "Upon motion properly brought, the court or a judge thereof, if such court is not in session, may order disclosure of such records to the accused if the court or judge thereof, as the case may be, finds that nondisclosure may be harmful to the accused in a civil action or may order disclosure to a defendant or the accused in an action for false arrest arising out of the proceedings so erased."
The statute is a remedial one in that it affords a remedy against the consequences of nondisclosure of records to a person made a defendant in a civil proceeding. The statute remedies the decision of the Supreme Court in Lechner v. Holmberg,165 Conn. 152, which interprets an earlier version of § 54-90 as precluding any disclosure. The statute protects from the harmful consequences of nondisclosure those persons whose involvement in the arrest in the criminal action causes them to be named defendants in a civil action arising out of the criminal proceeding.
A statute which is remedial is to be liberally construed to effect its purpose. Merchants Bank Trust Co. v. Pettison, 112 Conn. 652, 655; Bradley
v. Fenn, 103 Conn. 1, 4; Powers v. Hotel Bond Co.,89 Conn. 143, 146. The cardinal rule of statutory interpretation is that the construction must effect the real purpose for which the statute was enacted.West Hartford v. Thomas D. Faulkner Co.,126 Conn. 206, 211. "The intent of the lawmakers is *Page 162 
the soul of the statute, and the search for this intent we have held to be the guiding star of the court. It must prevail over the literal sense and the precise letter of the language of the statute. . . . When one construction leads to public mischief which another construction will avoid, the latter is to be favored unless the terms of the statute absolutely forbid." Bridgeman v. Derby, 104 Conn. 1, 8.
In Sturges v. Raymond, 27 Conn. 473, the Supreme Court stated (pp. 476-77) that: "In construing statutes like the one under consideration, a liberal construction should be given to the terms made use of by the legislature, in order to suppress the mischief and advance the remedy intended; for it is to be presumed, that when the legislature pass a remedial statute, that has for its object the promotion of important public interests, they intend to cover the whole ground, and the terms they make use of should be so construed, if it can be done without doing absolute violence to the language used. Hence, in the construction of such statutes, it oftentimes becomes necessary to go beyond the strict letter of the law, and bring within its provisions what the strict letter would exclude.
"Applying this principle to the statute in question, it is clear that the legislature could not have used the phrase in question in a literal sense; for a literal construction, it is easy to see, would embrace but a part of the evil that the legislature must have intended to remedy."
The remedial legislative intent behind the statute under consideration was to provide the accused and the civil defendants with the records necessary to the proof in any prosecution or defense arising out of the criminal proceeding. The term false arrest is a generic term used to identify the classic legal actions of false arrest, false imprisonment, *Page 163 
and malicious prosecution. The Supreme Court has indicated that at times courts have legally defined false arrest to mean the same as malicious prosecution, the procurement of prosecution without having any cause of action, McGann v. Allen,105 Conn. 177, 187-88, citing Castro v. De Uriarte,
12 F. 250, 253 (S.D. N.Y.).
"Absurd results are to be avoided." Lechner v.Holmberg, 165 Conn. 152, 159. "`Courts must assume that the legislature intended a reasonable and rational result and must, when possible, construe statutes accordingly.'" Stone v. Sullivan,154 Conn. 498, 503.
The statute should not be interpreted to permit disclosure only in the event that the technical claim for false arrest is made. The absurdness of limiting the remedial legislative intent by giving the term "false arrest" a narrow, technical, legal construction is readily apparent on the review of the burden of proof standards to be met in prosecuting and defending civil actions based on claims that criminal proceedings were unlawful.
In McGann v. Allen, supra, 185, the Supreme Court held three things essential for a malicious prosecution action: (1) that the plaintiff must have been discharged; (2) that the prosecution must have been without probable cause; and (3) that the prosecution must have been with malice. If he intends to pursue an action for malicious prosecution, Cutler, himself, must request disclosure of the court records in order to satisfy the burden of proof on the element of discharge. The records are essential for the movants to defeat a claim of discharge by proving that the nolle was requested by or arranged with Cutler. See v.Gosselin, 133 Conn. 158, 160. The records are also essential for the movants to show that there was *Page 164 
probable cause. A showing that the complainant was not a determining factor in the decision to prosecute is a complete defense to a malicious prosecution action. Fatone v. DeDomenico, 161 Conn. 576. The court records are vital to the proof of that defense. In a technical tort action for false arrest, the records are vital to provide the background and wrongfulness of the arrest and the lack of probable cause. The records in the criminal proceeding also include rulings by the court on many of the same issues that were raised in the civil action.
The legislature's clear intent after Lechner v.Holmberg, 165 Conn. 152, was to provide the accused and the civil defendants with access to all the evidence that might be necessary to prosecute and to defend all manner of litigation that might arise out of the criminal proceeding. Cutler may indeed be found to have waived any right to object to that disclosure by the bringing of the civil action.
An absurd result of not disclosing the records to the civil defendants would be the possible situation in which Cutler would request and receive disclosure of the records to prove the element of discharge, and the civil defendants then, by appropriate motion, required him to produce all documents in his possession under the broad disclosure and production rules of practice. Cutler should not thus be able to control the defense of the civil action.
The necessity and relevance of the court records to the burden of proof in the prosecution and defense of a claim for false arrest, malicious prosecution, or abuse of process demonstrate the absurdness of limiting the remedial legislative intent by giving the term "false arrest" a narrow, technical, legal construction. Cutler's memorandum dismisses, *Page 165 
without citing any authority, the necessity to delve into the police and court records of a nolled case in a malicious prosecution action. Yet the cases which he cites in relation to the essential elements of an action for false arrest or malicious prosecution all support the propositions (1) that those records are mandatory to prove discharge with or without request by or arrangement with the plaintiff; (2) that they are necessary and relevant to show probable cause and malice or lack thereof; and, (3) that they are vital to prove that the complainant was not a determining factor in the decision to prosecute. Fatone v. DeDomenico, 161 Conn. 576;See v. Gosselin, 133 Conn. 158, 160; McGann
v. Allen, 105 Conn. 177, 187.
The legislature's clear intent after Lechner v.Holmberg, supra, was to provide the accused and the civil defendants with access to all the evidence which might be necessary to prosecute and to defend all manner of litigation which might arise out of the nolled criminal proceeding, which evidence would otherwise be erased or destroyed. The right to prosecute and to defend civil actions would have no more impact on the accused's employment opportunities than would the civil action itself.
 For the foregoing reasons, the motions to disclose and preserve the court records of SNET and A T T are granted.