**Michael OGDEN, Plaintiff,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

Civ. A. No. 86–36 SSH.

United States District Court, District of Columbia.

Nov. 25, 1987.

John J. McDermott, Washington, D.C., for plaintiff.

Richard S. Love, Asst. Corp. Counsel, D.C., Washington, D.C., for defendants.

### MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on defendants' motion for summary judgment. Upon consideration of the parties' submissions and the entire record, the Court concludes that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law. Accordingly, defendants' motion is granted.

### *Background*

Plaintiff Michael Ogden was arrested on April 5, 1985, and charged with the March

15, 1985, murder of Carolyn Eley, his former girlfriend. Ogden's arrest was based on what turned out to be an incorrect eyewitness identification. When detectives from the Metropolitan Police Department (MPD) initially interviewed William Brown, an elderly man who had been walking with Eley at the time she was shot, Brown provided a general description of the assailant.[1] He made no identification at that time and failed to do so in several subsequent interviews. On April 1, however, Brown told the police that at the time of the shooting he had recognized the assailant as Eley's former boyfriend, whom Brown knew only as "Michael." He claimed that he had not made the identification previously because he was afraid of Michael. Brown told detectives that he had met Ogden about two-and-one-half years before the murder, had seen him a number of times with Eley, and that the plaintiff had beaten Eley on several occasions. Ogden's relationship with Eley, as well as the beatings, were corroborated by at least one other person.

Detective Manjoras, one of two detectives assigned to the Eley murder, noted in his "running resume" that Brown was a heavy drinker, "is less than sterling in character, and does have trouble remembering certain events and times...." By the witness's own admission, he had been drinking the night that Eley was killed. Manjoras was on leave when Brown first identified Ogden as the assailant. He interviewed Brown again; Brown was sober and "was adamant" that Ogden was the assailant. Manjoras became convinced that Brown's identification was truthfully made.[2]

In Manjoras's absence, the affidavit in support of the arrest warrant had been prepared by the detective who had taken Brown's formal statement.[3] Manjoras signed it on April 4. The affidavit recounted Brown's identification of Ogden as the assailant and the information that Eley previously had been assaulted by Ogden. The affidavit did not disclose Brown's prior inconsistent statements, nor did it reveal Manjoras's recorded concerns about Brown's character and sobriety. The affidavit was approved by Assistant United States Attorney Teslik and Lieutenant Pratt (Manjoras's supervisor), both of whom were aware of Brown's differing statements. Judge Mitchell of the Superior Court approved the warrant and Ogden was arrested. At Ogden's preliminary hearing on April 12, 1985, the Hearing Commissioner found probable cause to charge and released Ogden on bond. However, investigators eventually determined that Ogden had an alibi for the time of Eley's murder, and the charge of second-degree murder while armed was dismissed.[4] Several weeks later, the Superior Court of the District of Columbia granted Ogden's unopposed motion to seal the record of his arrest.

Ogden's complaint names the District of Columbia and Detective Manjoras as defendants and alleges violation of 42 U.S.C. § 1983 in the form of arrest and search without probable cause, common law false

---

1. Brown apparently was wounded in the incident.

2. Manjoras's case file indicates that he checked with security personnel at Quantico where Ogden (then in the United States Marine Corps) was stationed and learned Ogden was not on duty the evening of the murder. Plaintiff has submitted an affidavit from a security officer indicating that Manjoras did not have Ogden's whereabouts checked. The information in the case file was not, however, included in the arrest warrant affidavit.

3. This detective was not assigned to the case. His involvement in taking Brown's statement and drafting the affidavit does not appear to be unusual.

4. Plaintiff's original complaint alleged that Ogden provided investigators with an alibi before the affidavit in support of an arrest warrant was prepared. Plaintiff orally amended his complaint at a status call on May 8, 1986, and deleted this allegation. It now appears that Ogden was not asked about a possible alibi until after his arrest. Where other portions of the plaintiff's complaint incorporated references to the deleted material, *see, e.g.,* ¶ 11 ("[r]ather than interview any of the persons who were with Ogden ... Detective Manjoras prepared an affidavit"), the Court has read them in such a way that they comport with the deletion.

arrest and imprisonment, and common law negligence. Defendant Manjoras moved to dismiss the section 1983 claim on the basis of qualified immunity and the common law claims on the basis of absolute immunity. Defendant District of Columbia moved to dismiss on the grounds that plaintiff cannot maintain a section 1983 suit against the District for constitutional claims on the basis of *respondeat superior.* Both defendants also argue that if the section 1983 claims are dismissed, or if summary judgment is granted, no federal claim will remain and the remaining common law claims should be dismissed.

## Discussion

### I. *Plaintiff's Section 1983 Claims*

The Supreme Court's most recent decision treating the immunity of police officers under section 1983 is *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).[5] In discussing the availability of immunity under section 1983, the Court stated that "[i]n the case of an officer applying for a warrant, it is our judgment that the judicial process will on the whole benefit from a rule of qualified rather than absolute immunity." *Id.* 106 S.Ct. at 1097. The Court previously had defined qualified immunity in objective, rather than subjective, terms. *See Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed. 2d 396 (1982). Under the *Harlow* ruling, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. The "objective reasonableness" standard set forth in *Harlow* has been further refined by the Court in subsequent holdings. In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), for example, the Court held that an officer's reliance on a judge's or magistrate's probable cause determination "must be objectively reason-

able and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the [search] warrant was properly issued. Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard to the truth." *Id.* at 922–23, 104 S.Ct. at 3420–21. Although *Leon* defined the contours of immunity in the context of a suppression hearing, the Court found it proper to apply the same standard of objective reasonableness to an officer's request for an arrest warrant. *See Malley,* 106 S.Ct. at 1098.

First, the Court noted that "the qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Id.* at 1096. In setting forth the appropriate standard to the situation presented in *Malley*—an officer's request for an arrest warrant—the Court held: "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." *Id.* at 1098. The Court further explained that the appropriate "question ... is whether a reasonably well-trained officer ... would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Id.* (footnote omitted).

■ In *Malley* itself, the affidavit supporting the arrest warrant failed to establish probable cause. The case at bar presents a slightly different issue. Here, the affidavit, on its face, established probable cause. Plaintiff, however, contends that facts omitted from the warrant would have negated probable cause. Such a subfacial attack is relevant, because if an officer seeking a warrant deliberately or recklessly withholds material facts, the officer may be liable for a civil rights violation.

---

5. *Malley* involved a civil rights action brought against a Rhode Island state trooper who submitted a complaint and supporting affidavits that resulted in warrants being issued for the arrest of the plaintiffs. A grand jury declined to return an indictment. *See Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 1094–95, 89 L.Ed.2d 271 (1986).

*See United States v. Ferguson,* 758 F.2d 843, 848 (2d Cir.1985); *cf. Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed. 2d 667 (1978).[6] The *Malley* Court, while recognizing the need to leave "ample room for mistaken judgments," *id.* 106 S.Ct. at 1097, emphasized that the purpose of granting qualified, rather than absolute, immunity is to cause an officer "to reflect, before submitting a request for a warrant, whether he has a reasonable basis for believing that his affidavit establishes probable cause." *Id.* Although *Malley,* as noted above, did not specifically address subfacial attacks on affidavits, its tenets are applicable.

■ Examining the facts in light of the relevant standard, the Court concludes that summary judgment should be granted to defendants on either of two approaches. First, a *Franks*-type hearing on misstatements of material facts requires an initial finding that the challenged statements were necessary to establish probable cause in order to attack the affidavit successfully. *See, e.g., United States v. Malsom,* 779 F.2d 1228, 1235 (7th Cir.1985); *United States v. Ferguson,* 758 F.2d 843, 848 (2d Cir.1985). In the case of an attack based on omission, logic dictates that the affidavit be read as if the allegedly relevant material were included to determine whether probable cause would have been undetermined. It is true, to be sure, that an officer's claim of an eyewitness identification of a murder suspect carries heavy weight in making a probable cause determination. Information tending to mitigate that identification would have been useful and relevant. The Court is not convinced, however, that Brown's previous failure to identify Ogden as the assailant and Brown's drinking problems necessarily ne-

gate probable cause.[7] The eyewitness identification was made by someone acquainted with the suspect. Further, despite some reservation about Brown's reliability, certain statements he made had been independently verified. The mere fact that Ogden's innocence later was established to the satisfaction of all parties does not, in and of itself, make his arrest unreasonable: "Under the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved." *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed. 2d 288 (1967).

Even if Manjoras, through omissions, created probable cause where none existed, he did not necessarily lose all immunity. An officer's omission of material facts is a troubling issue, especially from the perspective of that officer's potential liability under section 1983.[8] Disclosure of the fullest range of relevant information allows the magistrate to exercise neutral and informed judgment. Withholding potentially crucial information undercuts a magistrate's ability to fulfill his or her vital function. The relevant inquiry is, therefore, to what extent an officer will be shielded from liability when possibly interfering with that function by submitting an incomplete affidavit that results in an illegal arrest. Under the standard first espoused in *Harlow,* the right that is allegedly violated must be "clearly established." *See Harlow,* 457 U.S. at 817, 102 S.Ct. at 2738. There is no doubt that an arrest warrant must be supported by probable cause, but such a conclusion does not end the inquiry. Detective Manjoras will nevertheless be accorded immunity if his "actions could reasonably have been thought consistent with

---

6. *Franks* involved misstatements of facts in an affidavit in support of a search warrant. Courts have interpreted *Franks* to include material omissions. *See United States v. Williams,* 737 F.2d 594, 604 (7th Cir.1984); *United States v. Martin,* 615 F.2d 318, 328 (5th Cir.1980). The *Franks* rationale allowing a subfacial attack on a search warrant has been extended to arrest warrants as well. *See Olson v. Tyler,* 771 F.2d 277, 280–81 (7th Cir.1985); *Leslie v. Ingram,* 786 F.2d 1533, 1535 (11th Cir.1986).

7. This is especially true considering that if those facts had been included, Manjoras certainly would have noted that his own doubts about Brown's reliability were dispelled by the later interviews.

8. The Court assumes that the omissions were material for the purposes of discussion only.

the rights [he has been] alleged to have violated." *Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). In *Anderson,* the Court made it clear that a qualified immunity analysis requires close examination of whether under the particular facts presented a clearly established right was violated. *See id.* 107 S.Ct. at 3038–39. As the Court took pains to note, "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." *Id.* at 3039. Thus, if Manjoras reasonably believed that probable cause existed, notwithstanding Brown's previous inconsistent statements, he should be shielded from liability.

After extensive review of the undisputed facts, the Court finds that even if probable cause would have been negated by inclusion of additional facts in the affidavit, Manjoras's conduct was objectively reasonable. For an officer to lose the shield of immunity a plaintiff must demonstrate that if the omitted material had been included, "a reasonably well-trained officer ... would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley,* 106 S.Ct. at 1098. Review of the pleadings and other documents submitted in this case does not show that Manjoras's behavior fell below that standard. Submission of an affidavit that acknowledges previous inconsistencies in an eyewitness's statement and discusses that witness's drinking problems may not be ideal, but it does not perforce strip the warrant application of all "indicia of probable cause," nor does it "render official belief in its existence unreasonable." Conversely, failure to have included that information is insufficient to cause Manjoras to lose his qualified immunity.

The Court concludes that defendant Manjoras enjoys qualified immunity, whether or not the arrest affidavit supports a finding of probable cause. Although the parties do not agree as to all of the facts, their rela-

tively minor factual disputes do not constitute a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Defendant Manjoras therefore is entitled to summary judgment on the section 1983 claim as a matter of law.

## II. *Plaintiff's Common Law Claims*

Defendant Manjoras argues that law enforcement officers enjoy absolute immunity from personal liability for common law torts, as long as their conduct falls within the "outer perimeter" of their official duties. However, as the Supreme Court stressed in *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), "[t]he common law has never granted police officers an absolute and unqualified immunity" for false arrest or false imprisonment. *Id.* at 555, 87 S.Ct. at 1218; *see also Martin v. D.C. Metro. Police Dep't,* 812 F.2d 1425, 1428 n. 11 (D.C.Cir.1987), *vacated in part on other grounds,* 817 F.2d 144 (D.C.Cir. 1987); *Wade v. District of Columbia,* 310 A.2d 857, 863 (D.C.1973). However, because the Court has found that probable cause existed to support the arrest warrant, it need not analyze defendant's immunity on those claims. Similarly, even if defendant Manjoras acted negligently, as alleged by plaintiff, his negligence resulted in a lawful arrest predicated on probable cause and plaintiff did not suffer a cognizable injury. For those reasons, defendants' motion for summary judgment on plaintiff's common law claims is also granted.

## III. *Claims Against the District of Columbia*

The parties agree that Ogden may not maintain a section 1983 claim against the District of Columbia on the basis of *respondeat superior. See Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) ("a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). If, however, an employee-tortfeasor is executing a policy or custom of the municipality, liability may lie. *See id.* at 694, 98 S.Ct. at 2037. Nevertheless, because the Court

concludes that probable cause existed to arrest Ogden even if the omitted facts had been included, the claim against the District may not be maintained.

Plaintiff earlier moved to amend his complaint. Ogden was seeking to show that his arrest was illustrative of a department-wide policy to close homicide cases quickly, making arrests even without probable cause. As part of that theory, Ogden also sought (1) to add three supervisory members of the MPD as defendants, (2) to add a claim under 42 U.S.C. § 1985 of conspiracy to violate civil rights, and (3) to add factual allegations relating to the conspiracy. That motion has been held in abeyance pending the ruling on defendants' motion to dismiss the original complaint. Defendants now having prevailed, plaintiff's motion to amend is denied. Because Manjoras's conduct was lawful, a "conspiracy" to commit that conduct is necessarily lawful as well.

An appropriate Order accompanies this Memorandum Opinion.

### ORDER

This matter is before the Court on defendants' motion for summary judgment. For reasons set forth in the accompanying Memorandum Opinion, after consideration of the parties' submissions and the entire record, the Court concludes that there are no genuine issues of material fact and that defendants are entitled to summary judgment as a matter of law. Accordingly, it hereby is

ORDERED, that defendants' motion for summary judgment is granted and the case is dismissed with prejudice. It hereby further is

ORDERED, that plaintiff's motion for leave to file an amended complaint is denied.

SO ORDERED.