Anthony GOLINO

v.

CITY OF NEW HAVEN, William Farrell, Robert Lillis, Anthony DiLullo, Leonard Pastore, Mary Fish–MacDonald, Joyce Carasone Lupone, John and/or Mary Doe One Through John and/or Mary Doe Ten Being Officers, Agents or Employees of the City of New Haven, the State of Connecticut or Those Acting in Concert with Them, Whose Names are Presently Unknown to the Plaintiff.

Civ. No. N–88–2 (JAC).

United States District Court, D. Connecticut.

April 18, 1991.

Donn A. Swift, Lynch, Traub, Keefe and Errante, New Haven, Conn., for plaintiff.

William Longa, Shelley Sadin, Zeldes, Needle & Cooper, Bridgeport, Conn., for defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

Plaintiff Anthony Golino has brought this action under 42 U.S.C. § 1983 ("section

1983"), seeking money damages for alleged violations of his constitutional rights. These claims arise from an eleven-year investigation of the murder of Concetta "Penny" Serra, who was killed in New Haven in 1973. The investigation led eventually to the arrest of plaintiff on July 3, 1984, pursuant to a warrant issued that day on a charge of murder.

On August 28, 1984, Superior Court Judge Frank Kinney found probable cause for the murder charge. The prosecution progressed until May 15, 1987 when, on the eve of trial, the court ordered a blood test which revealed that plaintiff's blood type did not match that of the killer. The charges against plaintiff were dismissed immediately thereafter. The dismissal of these charges, and the circumstances under which they were dismissed, have made the Serra homicide and its investigation the focus of local and national press attention.

Plaintiff alleges numerous violations of his civil rights and makes claims against the following named defendants: The City of New Haven; William Farrell, the Chief of Police of the City of New Haven at all times relevant to plaintiff's claims; Robert Lillis, a sergeant for the New Haven Police Department who supervised the Serra homicide investigation; Leonard Pastore, a detective for the New Haven Police Department who participated in the investigation; Anthony DiLullo, a detective for the New Haven Police Department who participated in the investigation; Mary Fish–MacDonald, an officer of the New Haven Police Department who participated in the investigation; and Joyce Carasone Lupone, the former wife of the plaintiff Anthony Golino, who is alleged to have conspired with the defendants named above. According to the Complaint—and there is apparently no dispute about this—the defendants DiLullo, Pastore and Fish–MacDonald "bore the personal and primary operational responsibility for the investigation." Complaint (filed Jan. 5, 1988), ¶ 13. Plaintiff identifies his four causes of action as (1) conspiracy, (2) arrest with excessive force, (3) malicious prosecution, and (4) supervisory and municipal liability. Default was entered against defendant Lupone on May 23, 1988,

and plaintiff's unopposed motion for judgment of default as to defendant Joyce Carasone Lupone (filed June 7, 1988) has not been acted upon, pending consideration of dispositive motions as to the other defendants.

Defendants moved for summary judgment, and the court heard oral argument on the motion on March 14, 1991.

For the reasons stated below, defendants' motion for summary judgment is granted with respect to plaintiff's excessive force and conspiracy claims (against defendants Lillis, DiLullo, Pastore, Fish–MacDonald, and John and/or Mary Doe One through Ten), inasmuch as those claims are time-barred by the applicable statute of limitations. Defendants' motion for summary judgment is also granted with respect to plaintiff's claims of supervisory and municipal liability (against defendants Farrell and City of New Haven), because plaintiff has not produced sufficient evidence to sustain all elements of those claims. However, with respect to plaintiff's claim of malicious prosecution (against defendants Lillis, DiLullo, Pastore, Fish–MacDonald and John and/or Mary Doe One through Ten), defendants' motion for summary judgment is denied because the record as it currently stands contains evidence from which a reasonable jury might infer that plaintiff was maliciously prosecuted. In denying defendants' motion with respect to the claim of malicious prosecution, the court intimates no view on the merits of this single remaining claim. It merely leaves this matter open for trial by jury.

## DISCUSSION

### A.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). "[T]he mere existence of *some* allegedly factual dispute between the parties will not defeat an otherwise proper-

ly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Finally, " 'mere conclusory allegations or denials' " in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).

### B.

There is no dispute among the parties that the limitations period governing this action is the three-year period allowed under Conn.Gen.Stat. § 52–577. And there is no dispute that plaintiff's claim of malicious prosecution (Count One) is not barred by that limitations period. *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment (filed Aug. 10, 1990) ("Defendants' Memorandum") at 32. Defendants argue, however, that plaintiff's excessive force claim (against defendants Lillis, DiLullo, Pastore, Fish–Mac-Donald, and John and/or Mary Doe One through Ten) (Count One) and his conspiracy claim (against defendants Lillis, DiLullo, Pastore, Fish–MacDonald, Lupone, and John and/or Mary Doe One through Ten) (Count Two) accrued, at the latest, at the time of the July 1984 arrest, more than three years prior to the commencement of this action on January 5, 1988, and that, therefore, those claims are time-barred. I agree.

■ Federal law, which governs the date of accrual of federal claims such as those asserted here, *see Kaiser v. Cahn*, 510 F.2d 282, 285 (2d Cir.1974), "establishes as the time of accrual that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). And as our Court of Appeals has made clear, even the existence of a conspiracy does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs. "It is the act, not the conspiracy, which is actionable...." *Id.* at 192.

■ However, on the ground that "the length of the limitations period, and closely related questions of tolling and application, are to be governed by state law," *Wilson v. Garcia*, 471 U.S. 261, 269, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985), plaintiff contends that *Singleton* is not controlling inasmuch as *Singleton*, a New York case, did not address the Connecticut "continuing wrong" exception to its statute of limitations. Plaintiff's Memorandum of Law in Opposition to the Defendants' Motion for Summary Judgment (filed Oct. 22, 1990) ("Plaintiff's Response") at 33–34. According to plaintiff, the alleged conspiracy and excessive force about which he complains amounted to a "continuing wrong," and the applicable three-year statute of limitations should therefore have been tolled until the conclusion of the continuing wrong (which plaintiff believes was May 15, 1987, the date when charges in the state criminal case were dismissed).

In support of his argument, plaintiff cites only *Mitchell v. City of Hartford*, 674 F.Supp. 60, 63 n. 3 (D.Conn.1986), a case in which Judge Blumenfeld discussed the concept of a "continuing wrong" but which

provides little, if any, support for plaintiff's conclusion. Judge Blumenfeld held in that case that the plaintiff's section 1983 conspiracy claim did *not* constitute a "continuing wrong." *See id.; cf. Singleton,* 632 F.2d at 192–93 (noting that a New York law—substantially similar to the Connecticut law for "continuing wrongs"—that postpones the accrual of certain causes of action did not apply to plaintiff's section 1983 claims). And, as Judge Blumenfeld explained, the "continuing wrong" exceptions "have generally been applied to correct inequitable situations that occur when the plaintiff's cause of action would otherwise be barred before he discovers the injury." *Mitchell,* 674 F.Supp. at 63 n. 3. Plaintiff in the instant case has not offered the sort of evidence that might suggest that such an "inequitable situation" occurred: There is no evidence that the three-year statute ran before he sustained the injuries, *see, e.g., Handler v. Remington Arms Co.,* 144 Conn. 316, 130 A.2d 793 (1957) (purchaser of negligently manufactured ammunition injured by it more than one year after purchase); *Bush v. Norwalk,* 122 Conn. 426, 189 A. 608 (1937) (plaintiff tripped on balance beam more than one year after it was negligently left on the floor—held to be a "continuing" danger), or before he became aware of the injuries, *see, e.g., Cross v. Huttenlocher,* 185 Conn. 390, 400, 440 A.2d 952, 958 (1981) (physician prescribes drugs to patient without warning of side effects); *Puro v. Henry,* 32 Conn.Supp. 118, 342 A.2d 65 (1975) (physician leaves surgical needle in plaintiff's abdomen).

Plaintiff does not allege any acts by defendants that violated his rights subsequent to his arrest on July 3, 1984, and he suggests no reason why the time for accrual for his claims of conspiracy and excessive force should be other than the day of his arrest. There was nothing to prevent plaintiff from bringing suit within three years of that date. And the fact that plaintiff continued to be prosecuted in the state criminal action until May 15, 1987 was not sufficient to toll the limitations period even though one of plaintiff's claims—namely, his malicious prosecution claim—did not accrue until the dismissal of the state crimi-

nal action and, hence, fell within the three-year limitations period. *See Singleton,* 632 F.2d at 191–92 (rejecting the plaintiff's argument "that the limitations period [for section 1983 false arrest and assault claims] should be tolled during the period in which the state criminal prosecution was pending against him").

Plaintiff in this case urges the court to adopt the view articulated by Judge Weinstein in his dissent in *Singleton.* Judge Weinstein argued that courts, when determining the date of accrual, should "consider the total transaction reflected in the series of events set forth in the complaint." *Singleton,* 632 F.2d at 202 (Weinstein, J., dissenting). Notwithstanding Judge Weinstein's arguments to the contrary, however, the majority opinion in *Singleton* remains the prevailing view. *See Keating v. Carey,* 706 F.2d 377, 382 (2d Cir.1983); *Rodrigues v. Village of Larchmont,* 608 F.Supp. 467, 477 n. 11 (S.D.N.Y.1985). And, according to the majority opinion in *Singleton,* "[t]he crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action." *Singleton,* 632 F.2d at 192. "To permit him to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims." *Id.* "The existence of a conspiracy does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs. It is the wrongful act, not the conspiracy, which is actionable...." *Id.*

For these reasons, I find that plaintiff's excessive force and conspiracy claims are barred by Connecticut's three-year statute of limitations. Defendants' motion for summary judgment is therefore granted with respect to those claims.

### C.

(i) *Plaintiff's Malicious Prosecution Claim: The Applicable Law*

■ With regard to plaintiff's claim of malicious prosecution (against defendants

Lillis, DiLullo, Pastore, Fish–MacDonald, and John and/or Mary Doe One through Ten) (Count One), the Court is required by 42 U.S.C. § 1988 [1] to turn to state law—in this case, Connecticut state law—to determine the necessary elements. *Conway v. Village of Mount Kisco,* 750 F.2d 205, 214 (2d Cir.1984), *cert. dismissed* 479 U.S. 84, 107 S.Ct. 390, 93 L.Ed.2d 325 (1986). In *McGann v. Allen,* 105 Conn. 177, 185, 134 A. 810, 813 (1926), the Connecticut Supreme Court set out the elements of a malicious prosecution claim as follows: "In an action for malicious prosecution three things are essential: (1) The discharge of the plaintiff; (2) that the prosecution was without probable cause; and (3) that it was malicious." The *McGann* court also stated that "[a]ll who knowingly procure, direct, aid, abet or assist in, or subsequently adopt" the acts constituting the malicious prosecution are liable as joint tortfeasors. *Id.* In the instant case, there is no dispute that the first element is met. The third element, malice, need not be independently established but can be inferred from the absence of probable cause. *See, e.g., Zenik v. O'Brien,* 137 Conn. 592, 596–97, 79 A.2d 769, 772 (1951); *State v. Cutler,* 33 Conn. Supp. 158, 163, 366 A.2d 805, 808 (1976). Thus, the central question on plaintiff's malicious prosecution claim is whether there is a genuine issue of material fact concerning the existence of probable cause to arrest and prosecute the plaintiff for the murder of Penny Serra.

(ii) *The Preclusive Effect of State Court Finding of Probable Cause*

█ Before addressing the question of whether or not there was probable cause, however, it is necessary first to address defendants' contention that the state court's probable cause hearing (and the finding of probable cause at that hearing

by Judge Kinney) gives rise to a defense of collateral estoppel, precluding "relitigation" of the question of whether there was probable cause. *See* Reply to Plaintiff's Memorandum of Law in Opposition to the Defendants' Motion for Summary Judgment (filed Dec. 7, 1990) ("Defendants' Reply") at 31–33. Plaintiff argues in response that the issue of probable cause was not fully and fairly litigated in the state court inasmuch as plaintiff "was barred from presenting evidence." Plaintiff's Response at 26. Defendants do not dispute that plaintiff was not permitted to present evidence, but they argue in turn that plaintiff had requested to present his own evidence and that Judge Kinney—after considering plaintiff's written offer of proof and finding that the proffered evidence would not undermine the showing of probable cause—denied plaintiff's request. Defendants' Reply at 31–32.

In support of the proposition that the state court's finding of probable cause acts as a bar to relitigation of that issue, defendants rely upon *Coogan v. City of Wixom,* 820 F.2d 170 (6th Cir.1987) in which the court stated that

[w]here the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action.

*Id.* at 175. This authority, however, does not settle the matter. To begin with, it is not clear that plaintiff Golino was given "an opportunity ... to contest probable cause at a preliminary hearing" in the state criminal case before Judge Kinney. The court in *Coogan* was applying Michigan law, under which "a preliminary hearing is an adversary proceeding," inasmuch as "an accused has the right to call witnesses and

---

1. 42 U.S.C. § 1988 provides in pertinent part as follows:

The jurisdiction in civil ... matters conferred on the district courts by the provisions of [Title 42] ... where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law,

as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil ... cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause....

cross-examine witnesses produced by the State." *Id.* As stated above, there is no dispute in the instant case that plaintiff was barred from presenting any evidence at the preliminary hearing in the state criminal case.

Moreover, *Coogan* is the only authority that defendants offer. Presumably, many, if not all, section 1983 cases in which a plaintiff makes a claim for malicious prosecution stem from criminal cases in which probable cause was contested at a preliminary hearing; yet, with the possible exception of *Coogan*, defendants have offered, and the court has found, no other authority for the proposition that a finding at a preliminary probable cause hearing in a criminal matter forecloses relitigation of that finding in a subsequent section 1983 action. Indeed, even in *Coogan*, that proposition is offered only as an argument in the alternative. The court in *Coogan* itself "relitigated" the issue and, in doing so, "determined that plaintiff failed to establish the absence of probable cause under Michigan law." *Id.* at 174. Additionally, the *Coogan* court stated that the lower court in that case had "properly directed a verdict on the state claim of malicious prosecution," *id.* at 173, when it found that the plaintiff had offered no facts that negated the finding of probable cause, implying that there was nothing inappropriate about the lower court's "relitigation" of the probable cause issue.

Absent any persuasive argument or authority to the contrary, therefore, I find that the state court's probable cause hearing and the finding of probable cause by Judge Kinney have no preclusive effect in the instant case.

### (iii) *The Merits of the Probable Cause Question*

■ As a general matter, "probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Calamia v. City of New York*, 879 F.2d 1025, 1032 (2d Cir.1989).

*See generally Illinois v. Gates*, 462 U.S. 213, 241–46, 103 S.Ct. 2317, 2333–36, 76 L.Ed.2d 527 (1983). With regard to the question of probable cause, plaintiff does not argue that the arrest warrant affidavit was somehow deficient on its face. Instead, plaintiff contends that the arrest warrant affidavit contained material omissions and false statements. This sort of "subfacial" attack on an arrest warrant is governed by the standards established in *Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667 (1978), *see, e.g., Willocks v. Dodenhoff*, 110 F.R.D. 652, 656–59 (D.Conn.) (Blumenfeld, J.) (applying *Franks* standard in section 1983 action and reviewing relevant case law indicating "that constitutional rights should be applied congruently in criminal suppression hearings and section 1983 damage actions"), *aff'd*, 805 F.2d 392 (2d Cir. 1986).

Under *Franks*, the party challenging the warrant has the burden of, first, making a substantial showing of evidence "that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and, second, establishing that "the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676. Plaintiff in the instant case must, to survive defendants' summary judgment motion, provide sufficient evidence that a reasonable jury could find for him under this *Franks* standard. *Cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254–55, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) ("The question here is whether a jury could reasonably find *either* that the plaintiff proved his case by the quality and quantity of evidence required by the governing law *or* that he did not." (emphasis in original)).

Based on a full review of the record before me, I find that there are genuine issues of material fact precluding summary judgment on plaintiff's malicious prosecution claim. Plaintiff has made the requisite showing that a reasonable jury could find that the entire set or some subset of the omissions and false statements in the arrest warrant affidavit was material to a

finding of probable cause and, moreover, that those omissions and false statements were made knowingly, intentionally or with reckless disregard for the truth.[2] That set includes, but is certainly not limited to,[3] the undisputed fact that the arrest warrant affidavit made no mention of the fact that an eyewitness, Gary Hryb, had positively identified another suspect within hours of the murder. *See* Plaintiff's Response at 18; Defendants' Reply at 10.

Defendants argue in response that the Hryb identification was "unreliable" and therefore would not negate probable cause. *Id.* Defendants, however, provide no direct authority for the proposition that an unreliable identification could not, as a matter of law, be material to the finding of probable cause. Moreover, even if it were the case that the omission of an "unreliable" identification would not constitute a material omission for these purposes, defendant does not define what is meant by "unreliable." Or, put differently, defendant does not explain at what point along the spectrum of reliability an eyewitness's identification should, as a matter of law, be deemed "unreliable." The evidence that defendants provide in support of their conclusion—including, primarily, evidence that "Hryb was believed to be under the influ-

ence of marijuana" when he observed the third-party suspect, Defendants' Memorandum at 10; *see also* Defendants' Reply at 10 (emphasizing this evidence)—is not sufficient for the court to find, as a matter of law, that the identification by Hryb would not have negated probable cause.

Defendants cite three cases in support of their argument. *Id.* 10–11. These cases, however, provide little support for defendants' conclusion. In the first case, *Ogden v. D.C.*, 676 F.Supp. 324 (D.D.C.1987), *aff'd*, 861 F.2d 303 (D.C.Cir.1988), the eyewitness identification had been included in, not *excluded from*, the affidavit, and the court held that the fact that information regarding the eyewitness identification was omitted from the warrant affidavit—that is, that the eyewitness had been drinking and had initially failed to make the identification—did not necessarily vitiate the finding of probable cause.[4] In at least two respects, this holding appears to be contrary to defendants' position in the instant case. First, it suggests that the fact that Gary Hryb might have been under the influence of a behavior-altering substance does not necessarily render his identification immaterial (just as it was immaterial that the eyewitness in *Ogden* was under the influ-

**2.** There is no dispute that the arrest warrant affidavit contained several omissions and false statements, although there is dispute over whether those omissions and false statements were "material." Among other things, the affidavit omitted (1) descriptions of the suspect provided by four witnesses, (2) prior statements of Joyce Carasone Lupone that were inconsistent with statements attributed to her in the affidavit, (3) the full description of the suspect's car as provided by one eyewitness, (4) plaintiff's sister's statements that plaintiff had the scar on his left wrist since childhood, (5) evidence that fingerprints on Ms. Serra's car which were strongly believed to belong to Ms. Serra's killer did not match plaintiff's fingerprints, (6) the fact that investigators had not verified plaintiff's blood type, and (7) the fact that plaintiff was unmarried and lived in New Haven in 1973. There were also several false statements contained in the warrant affidavit including the statements (1) that plaintiff "frequently visited" the W.T. Grant Store in New Haven, (2) that Diana Morrone and Patricia Capone Anderson described an ace bandage on plaintiff's "left wrist," (3) that plaintiff cancelled "all" sched-

uled meetings with defendants during the investigation, and (4) that Neil Russo, an informant, told police that plaintiff had gone to school with and dated Penny Serra. *See* Plaintiff's Response at 17–24; Defendants' Reply at 7–25.

**3.** *See supra* note 2.

**4.** It is worth noting that the *Ogden* court did not squarely address the question of whether the omission of the information regarding the eyewitness negated probable cause. The court stated simply that it was "not convinced" that the omission of that information "necessarily negate[s] probable cause." *Ogden*, 676 F.Supp. at 327. The *Ogden* court's grant of summary judgment for the defendant on plaintiff's section 1983 claims appears to be based primarily on different grounds—that is, that the defendant in that case was entitled to qualified immunity. *Id.* at 327–28. As the court in *Ogden* put it: "After extensive review of the undisputed facts, the court finds that even if probable cause would have been negated by inclusion of additional facts in the affidavit, [defendant's] conduct was objectively reasonable." *Id.* at 328.

ence of alcohol when he witnessed the murder). Second, the *Ogden* holding suggests that eyewitness identifications, even when they are flawed in some respects, are likely to be material to a finding of probable cause. As the court in *Ogden* stated, "an officer's claim of an eyewitness identification of a murder suspect carries heavy weight in making a probable cause determination." *Id.* at 327. If anything, that statement supports plaintiff's contention in the instant case that the omission of the eyewitness identification was a material omission.

The court in *United States v. Lewis*, 425 F.Supp. 1166, 1174 (D.Conn.1977) (Blumenfeld, J.)—the second case cited by defendants—held that the omission of the fact that six witnesses *failed* to make identification did not in itself negate probable cause when the affidavit included one positive identification. This case also appears to support plaintiff inasmuch as it emphasizes the importance of an eyewitness identification to a finding of probable cause and, by implication, the materiality of omitting an eyewitness identification. "[T]he significant weight to be given to an eyewitness identification is revealed by the fact that a single identification by an eyewitness may in and of itself support a finding of probable cause." *Id.*

Finally, defendants rely on *Holdeman v. Consolidated Rail Corp.*, 649 F.Supp. 1188, 1199 (N.D.Ind.1986). The court in *Holdeman* held that an eyewitness's later indication that "he could not be sure of the identification of Mr. Holdeman" did not necessarily negate the finding of probable cause with regard to that suspect. But *Holdeman* is inapposite. In the instant case, plaintiff is arguing that the *omission* of the fact that an eyewitness *did* identify a suspect other than plaintiff may undermine probable cause.

Based on the record as it now stands, it appears that plaintiff has made a substantial preliminary showing that (1) the arrest warrant affidavit contained this omission, as well as other omissions and false statements,[5] (2) these alleged defects in the ar-

rest warrant affidavit were made knowingly, intentionally or with reckless disregard for the truth, and (3) these alleged defects, especially when taken together, are material to the finding of probable cause—that is, absent the defects there does not "remain[ ] sufficient content in the warrant affidavit to support a finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155–56, 172, 98 S.Ct. 2674, 2676–77, 2684, 57 L.Ed.2d 667 (1978); *see also Willocks v. Dodenhoff*, 110 F.R.D. 652, 657 (D.Conn. 1986). Accordingly, plaintiff is entitled to a hearing by a finder of fact. *Franks*, 438 U.S. at 172, 98 S.Ct. at 2684–85. Put differently, plaintiff in this case is entitled to have a jury trial on his claim of malicious prosecution.

Of course, whether plaintiff will prevail at trial is another issue. Again, I intimate no view whatsoever on what is, ultimately, a question of fact. I am mindful of defendants' argument that some deference should be paid to the finding of probable cause by Judge Kinney in the state case and of the arguments made by defendants that the omissions and the false statements in the arrest warrant affidavit were immaterial to the finding of probable cause. But in my view, plaintiff has provided enough evidence for a reasonable jury to find to the contrary. A summary judgment motion is not the place to resolve that dispute. As our Court of Appeals has stated repeatedly, " 'on a motion for summary judgment the court cannot try issues of fact; it can only determine whether there are issues to be tried.' " *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir.1983) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975)). For these reasons, it appears that defendants' motion for summary judgment with regard to plaintiff's malicious prosecution claim must be denied.

(iv) *The Question of Qualified Immunity*

Defendants argue in the alternative, however, that summary judgment should

5. *See supra* note 2.

be granted on plaintiff's malicious prosecution claim because defendants are entitled to qualified immunity. I disagree.

▮ Police officers are qualifiedly immune from suits for civil damages alleging violations of federal law. When the circumstances surrounding an officer's actions are undisputed and when the undisputed facts, together with inferences that may properly be drawn from those facts, show that the officer is entitled to qualified immunity, the issue of qualified immunity can be decided on a motion for summary judgment. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987); *Schiff v. Kerrigan,* 625 F.Supp. 704, 708 (D.Conn.1986). However, because a police officer's immunity is only qualified, his conduct may or may not be shielded from liability depending on the circumstances. Additional facts may be needed in order to determine if immunity is available. *See Lawson v. Abrams,* 863 F.2d 260, 262–63 (2d Cir.1988); *White v. Frank,* 855 F.2d 956, 958, 962 (2d Cir.1988); *Kaminsky v. Rosenblum,* 929 F.2d 922, 926–27 (2d Cir.1991).

▮ The question of immunity is distinct from, albeit related to, the question of probable cause. *Magnotti v. Kuntz,* 918 F.2d 364, 367 (2d Cir.1990); *Warren v. Dwyer,* 906 F.2d 70, 75 (2d Cir.1990). There may be circumstances, in other words, in which there was not probable cause—for example, because there was less than sufficient knowledge or information "to warrant a person of reasonable caution in the belief that" plaintiff had committed the offense, *Calamia v. City of New York,* 879 F.2d 1025, 1032 (2d Cir.1989)—but in which the officers are nevertheless qualifiedly immune because it was objectively reasonable for the officers to believe they were not violating plaintiff's rights. *Creighton,* 483 U.S. at 641, 107 S.Ct. at 3039–40; *Magnotti,* 918 F.2d at 367.

Such circumstances occur (1) when "it was not clear at the time of the official acts that the interest asserted by the plaintiff was protected by a federal statute or the Constitution," *Robison v. Via,* 821 F.2d 913, 920–21 (2d Cir.1987), or (2) when "it was not clear at the time of the acts at issue that an exception did not permit those acts," *id.* at 921, or (3), when, because of the particular factual situation surrounding the official acts, it was objectively reasonable for defendants to believe that their acts did not violate plaintiff's rights under the law as it existed at the time of the acts, *id.; see also Creighton,* 483 U.S. at 638, 107 S.Ct. at 3038; *Malley v. Briggs,* 475 U.S. 335, 344, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Warren,* 906 F.2d at 77 (Winter, J., dissenting); *Kaminsky,* 929 F.2d at 925 ("If the right is so generalized that its application in the factual context of the case is subject to doubt, the immunity defense may bar action against the official.").

▮ The first two routes to qualified immunity can be ruled on as a matter of law exclusively. In this case, the alleged constitutional violation complained of by plaintiff involves a right that was clearly established and was not subject to an exception at the time of his arrest—that is, the right not to be arrested without probable cause. *Robison,* 821 F.2d at 921. Thus, qualified immunity does not appear to be available to defendants in this case on either of these legal grounds.

▮ The third route to qualified immunity "has its principal focus on the particular facts of the case." *Id.* "[T]he court ruling on the qualified immunity issue must know what the facts were that the officer faced or perceived, *and the finding of those facts* appears to be a matter for the jury ... presumably to be handled by the framing of special interrogatories." *Warren,* 906 F.2d at 77 (Winter, J., dissenting) (emphasis added); *accord id.* at 76 (Kaufman, J. for himself and Feinberg, J.). Viewing the evidence in the light most favorable to the plaintiff and drawing all inferences favorable to the plaintiff, the court cannot, based upon a full review of the record as it now stands, find that as a matter of law it was "objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate an established federally protected right."

*Hurlman v. Rice,* 927 F.2d 74, 79 (2d Cir. 1991); *Robison,* 821 F.2d at 921. Accordingly, defendants' motion for summary judgment on the basis of qualified immunity is denied.

Whether defendants are entitled to qualified immunity is ultimately a question of law for the court to decide. *See Warren,* 906 F.2d at 76; *Finnegan v. Fountain,* 915 F.2d 817 (2d Cir.1990). *But cf. Hurlman,* 927 F.2d at 78–79 (seeming to imply that the issue of qualified immunity may be a question for the jury); *Calamia v. City of New York,* 879 F.2d 1025, 1035–36 (2d Cir.1989) (same); *Robison,* 821 F.2d at 921 (same). The denial of defendants' motion for summary judgment with respect to the qualified immunity defense is therefore without prejudice to renewal in due course on a motion for a directed verdict or on a motion for judgment notwithstanding the verdict. *See Warren,* 906 F.2d at 74 (explaining that because "[p]retrial resolution of the defense ... may be thwarted by a factual dispute or require further discovery," the defense may be raised on such motions). At trial, the primary task for the jury will be to determine whether defendants had probable cause to arrest plaintiff. If the jury finds that there was probable cause for the arrest, then the qualified immunity defense will not be reached. If, on the other hand, the jury finds that there was no probable cause, defendants' qualified immunity defense will fail as a matter of law *unless* there is evidence in the record to suggest that the particular factual circumstances surrounding plaintiff's arrest made it objectively reasonable for the defendants to believe that they were not violating plaintiff's rights in arresting him. Insofar as such evidence creates genuine issues of material fact, the jury will be asked to decide the unresolved factual issues on special interrogatories. *See id.* at 76 (explaining that this is the proper procedure for settling any unresolved factual issues before the court decides the question of qualified immunity); *accord id.* at 77 (Winter, J., dissenting). In any case, if the evidence (and, if necessary, the jury's findings) suggest that it may have been objectively reasonable for defendants to believe that they were acting in a fashion that did not clearly violate an established federally protected right, then the court will determine whether, on the facts found, it *was* objectively reasonable for the defendants to so believe. *Id.* at 76; *see also Kaminsky v. Rosenblum,* 929 F.2d at 926–27.

## D.

Defendants argue that summary judgment should be entered with respect to the claims against Police Chief William Farrell and the City of New Haven because plaintiff has not produced sufficient evidence to sustain all elements of his municipal and supervisory liability claims. I agree.

There is no dispute as to the standards governing claims for supervisory and municipal liability under section 1983. *See* Defendants' Memorandum at 26–27; Plaintiff's Response at 30. A supervisor may be liable for the unlawful acts of subordinate governmental actors if he had "actual or constructive notice of unconstitutional practices and demonstrate[d] gross negligence or deliberate indifference by failing to act." *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1066 (2d Cir.1989) (quotation marks omitted); *see also Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986) (a supervisor may be liable if "he learned of the violation and failed to remedy the wrong, if he created or permitted the policy or custom under which the unconstitutional practices occurred, or if he was grossly negligent in managing subordinates who caused the violation"). A municipality may

> be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

*City of Canton, Ohio v. Harris,* 489 U.S. 378, 389–90, 109 S.Ct. 1197, 1205, 103

L.Ed.2d 412 (1989) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978) and *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981)).

Plaintiff has offered no evidence which could meet either of these standards. Plaintiff does assert that "[i]n light of the severe and blatant misconduct manifest in this case, [Chief Farrell's] detached approach to training and supervision clearly constitutes the sort of gross negligence and deliberate indifference giving rise to supervisory and municipal liability." Plaintiff's Response at 32. Assuming only for the argument that there was some "misconduct" here on the part of the police officers, plaintiff offers no evidence that Chief Farrell is liable for it. *See Al–Jundi*, 885 F.2d at 1065 ("liability cannot attach under the doctrine of *respondeat superior* "); *id.* at 1066 ("personal involvement of defendant[ ] ... is a prerequisite"); *id.* (supervisory liability attaches if official had actual or constructive notice of unconstitutional practices and demonstrated gross negligence or deliberate indifference by failing to act). Nor does plaintiff provide any evidence that would give rise to an inference of a policy or custom of constitutional deprivations. Plaintiff cites no other allegedly unconstitutional arrests; his own arrest, assuming for the argument that it was unconstitutional, does not establish a policy or custom. *See, e.g., Sarus v. Rotundo*, 831 F.2d 397, 402 (2d Cir.1987) (reversing denial of city's and police chief's motions for directed verdict and j.n.o.v. where no other incident of misconduct presented); *Turpin v. Mailet*, 619 F.2d 196, 202, 203 (2d Cir.1980) (reversing jury verdict against city where only evidence was plaintiff's own arrest and city's previous failure to discipline arresting officer in another instance of excessive force), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). Plaintiff does claim that defendant Mary Fish, a police officer who investigated the Serra homicide, was inadequately trained in skills essential to a homicide detective and that none of the defendants were sufficiently trained in the use of force. Plaintiff's Response at 31. Again, however, plaintiff offers no evidence in support of those claims. As our Court of Appeals has made clear, mere conclusory allegations in legal memoranda are not evidence and, by themselves, cannot create a genuine issue of material fact. *See Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980). Accordingly, defendants' motion for summary judgment with respect to plaintiff's claims against defendants City of New Haven and Police Chief Farrell is granted.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment (filed Aug. 10, 1990) is DENIED with respect to plaintiff's claim of malicious prosecution (against defendants Lillis, DiLullo, Pastore, Fish–MacDonald, and John and/or Mary Doe One through Ten) and GRANTED with respect to plaintiff's claims of conspiracy (against defendants Lillis, DiLullo, Pastore, Fish–MacDonald, Lupone, and John and/or Mary Doe One through Ten), arrest with excessive force (against defendants Lillis, DiLullo, Pastore, Fish–MacDonald, and John and/or Mary Doe One through Ten), supervisory liability (against defendant Farrell) and municipal liability (against defendant City of New Haven).

It is so ordered.